## LYNDE *against* DENISON.

On the 17th of *September*, 1787, the defendant executed a bond for 100*l.*, the condition of which was, that he should convey to the obligee, certain real estate. On the death of the obligee, in 1796, the defendant was appointed administrator of her estate; her only heirs, or persons entitled to her estate, then being, and for twenty-one years thereafter continuing to be, femes covert. To an action on the probate bond, brought in 1819, for their benefit, alleging a breach, by the failure of the defendant to pay the money specified in the first-mentioned bond, or to perform the condition thereof, the defendant pleaded payment and performance; for the proof of which, he relied upon the lapse of time. It was held, that though such lapse of time, unexplained, would create a legal presumption of performance, yet the presumption, in this case, was repelled, by the incapacity of the persons principally interested, to sue.

A presumption, from lapse of time, of payment or performance, will not affect the rights of those to whom no laches is imputable.

THIS was an action of debt, on a probate bond, executed by the defendant, as administrator of the estate of *Lydia Williams*, deceased, brought in *March*, 1819. The defendant, after oyer of the condition of the bond, pleaded that he had fully administered. The plaintiff, in his replication, stated a breach as follows: That a short time previous to the year 1789, *Daniel Williams*, the husband of *Lydia Williams*, at the time of his decease, died intestate, leaving certain parcels of real estate in *Saybrook*, particularly described, and leaving also a daughter, *Lydia Denison*, who then was, and until the 6th of *March*, 1810, continued to be, the wife of the defendant, and five other daughters, to whom his estate descended; that on the 17th of *September*, 1787, the defendant, in and by a certain writing, under his hand and seal, by him well executed, promised the widow *Lydia Williams*, for value received, to

*Middlesex,*
October,
1820.

*Lynde*
*v.*
Denison.

pay to her the sum of 100*l*. lawful money, on demand ; to which writing there was annexed a condition, that if the defendant should execute and deliver a good and ample deed, to the said *Lydia Williams,* of all the real estate that should fall to him, the defendant, and his wife *Lydia,* by the division of the estate of said *Daniel Williams,* the writing should be void, and of no effect ; that afterwards, and during the life of *Lydia Williams,* in the settlement and division of said estate, one undivided sixth part thereof, fell to said *Lydia Denison,* and to the defendant, her husband, in her right ; and that neither the defendant, nor his wife, has ever conveyed the estate, which so fell to them, or any part of it, to said *Lydia Williams.* The replication also averred, that said writing, the sum therein mentioned not having been paid or discharged, was, at the time of the decease of *Lydia William,* in *January,* 1796, a part of the credits belonging to her estate ; yet the defendant has made no inventory of it, nor has he rendered any account of it to the judge of probate. The rejoinder of the defendant, after stating that this action was brought and prosecuted for the sole use and benefit of the five sisters of *Lydia Denison,* averred, that before the death of *Lydia Williams,* he, the defendant, fully performed and executed the condition of said writing, to her full and entire satisfaction, and that the sum therein mentioned, was fully paid ; and that said writing, at the death of *Lydia Williams,* was not part of her estate, and never came to the knowledge of the defendant. These averments the plaintiff traversed ; on which issue was joined.

The cause was tried at *Haddam, December* term, 1819, before *Hosmer,* Ch. J.

On the trial, the defendant claimed, that he had proved the issue on his part, by the length of time, which had elapsed since the making of the writing in question. The plaintiff claimed, that the evidence arising from length of time, was fully answered, by the fact, that the defendant, being administrator of the estate of *Lydia Williams,* from the beginning of the year 1796, had never been removed from that office ; and by the farther fact, that all the persons named in the pleadings, as those for whose use and benefit this action was brought, were femes covert at the time the obligee died, and so have continued to be until within two years past. These facts were admitted. The defendant adduced some evidence, be-

sides length of time, conducing to prove payment. The judge, after having opened the pleadings to the jury, and stated the points in issue, charged them as follows : " The first enquiry before you, is, whether the bond in question, came to the knowledge of the defendant, and was part of the estate of *Lydia Williams*, at her decease. The next enquiry is, whether this bond was *paid* to *Lydia Williams*; and this is the hinge on which both enquiries turn. After the lapse of twenty years from the accruing of the cause of action on a bond, it is, at common law, a legal presumption, if the presumption is not repelled by proof, that the bond has been satisfied. In the case on trial, about nine years after the bond was given, the defendant became administrator on the estate of Mrs. *Williams*; and from that period, about twenty-two years have elapsed. The defendant contends, that from these facts you must presume payment. The plaintiff insists, that no presumption of this kind arises, as the heirs of Mrs. *Williams* were married women, and disabled to sue. On this point, I inform you, that the fact of their having been married women, inasmuch as they had husbands, who were not disabled to sue, and who were interested to do it, is not such a fact as, in itself, absolutely repels or destroys the presumption of payment. I further inform you, that from the lapse of time, payment, or satisfaction in some shape, is legally to be presumed, unless, from all the facts in this case, you shall find, that the presumption is repelled. On the other hand, if there are other facts, which strengthen the presumption of payment, they are to be taken into the account." Under these directions, the jury gave a verdict for the defendant : and the plaintiff moved for a new trial, on the ground of a misdirection. The judge reserved the motion.

*Sherman*, in support of the motion. 1. A presumptive bar, in analogy to the statute of limitations, has all the qualifications, savings and exceptions of the statute, to which it is analogous. The statute limiting actions on bonds and notes, saves the rights of persons, " legally incapable to bring their actions." *Tit.* 101. *c*. 1. *s*. 3. Coverture is an incapacity within this saving ; and will, therefore, of itself, repel a presumption, arising from lapse of time. The foundation of the presumption, is *neglect* in the person having the right. But

*Middlesex,*
October,
1820.

Lynde
*v.*
Denison.

*Middlesex,*
October,
1820.

*Lynde
v.
Denison.*

the right, which the persons for whose benefit this suit is brought, had, under the bond in question, was one which they could not enforce. No neglect, therefore, is imputable to them, for not enforcing it. The law is not chargeable with the injustice of taking from a person the power of asserting her right, and, at the same time, of punishing her with a for-. feiture of that right, for not asserting it. That the husband could sue, during the incapacity of the wife, does not militate against the argument. It is her right that is in question ; but, his neglect is not hers. Ought she to suffer for it ? The re-mainder-man is not injured by the neglect of the tenant.

2. The nature of the obligation, in this case, precluded the presumption claimed. The writing in question, was not given to secure the payment of a certain sum of money, but to oblige the defendant, under the sanction of a penalty, to convey real estate. No money was to be paid, except by way of penalty ; and that could not become due, without a breach of the con-dition. But the defendant, in his rejoinder, has averred, that he performed the condition, to the entire satisfaction of the obligee. It follows, that no money was ever due from him ; and it cannot be presumed, that he ever paid any. The next enquiry is, does a presumption arise, in contemplation of law, from lapse of time, that the defendant has made a conveyance of certain real estate ? There is no authority warranting such a presumption. Nor is there any necessity of resorting to such a presumption ; for there is no difficulty in establishing a transfer of real estate, by direct evidence.

3. If a release could be presumed from lapse of time, it would avail nothing under a plea of performance.

4. From the peculiar circumstances of this case, neither the present plaintiffs in interest, *nor their husbands*, could sue ; the defendant being, at the same time, obligor, and administra-tor of the obligee.

*Staples* and *Hungerford*, contra, contended, 1. That a bond, after the lapse of twenty years, unexplained, is presumed to be satisfied. 1 *Selw. N. P.* 588,9. *Phill. Ev.* 114. *Hillary v. Waller,* 12 *Ves.* jun. 266. *Clark's* ex'rs. v. *Hopkins,* 7 *Johns. Rep.* 556.

2. That there were no circumstances, in this case, which re-pelled the presumption. First, the coverture of the plaintiffs

in interest, had not this effect; as their husbands were capable of suing. In no case has the presumption been considered as repelled, by the incapacity of the obligee, where there was a power to sue, coupled with an interest. Here, the power of the husband is not questioned; and, considering the claim as a *chose in action*, he had even a stronger interest than the wife to enforce it speedily, as he would lose it, if he failed to reduce it to possession, during the coverture. But the claim was, in truth, a share of an intestate estate, accruing in right of the wife, during coverture; which, of course, vested in the husband alone. *Griswold* v. *Penniman,* 2 *Conn. Rep.* 564. Secondly, the circumstance that the claim was not for the payment of money, but for the performance of a collateral duty, did not repel the presumption. The principle on which the presumption is founded, is, " that a man will naturally enjoy what belongs to him;" (*a*) in other words, that he will assert his rights. In the application of this principle, a payment, satisfaction, performance, a surrender of release, will be presumed, as the nature of the case may require. 12 *Ves.* jun. 265. 2 *Vern.* 484. *Peake's Ev.* Append. No. 4. Thirdly, the situation of the defendant, as obligor and administrator of the obligee, did not repel the presumption; as there has been, during the whole period, a complete remedy on the probate bond.

*Sherman,* in reply, observed, that this was not the case of a distributive share, but a contract to convey a certain portion of real estate to married women; to which they, and not their husbands, were entitled.

HOSMER, Ch. J. This case presents the following questions. 1. Whether from the time which elapsed, unexplained as it is, payment of the sum in demand ought to be presumed. 2. Whether the disability of the femes covert to bring suit, repelled the presumption. 3. Whether the bond's having been on condition to convey real estate, makes any difference in the result. 4. And whether the lapse of time was evidence of a release, but not of satisfaction.

1. A forbearance for the period of twenty years, when un-

(*a*) Per Lord Chancellor *Erskine,* 12 *Ves.* jun. 265.

*Middlesex,*
*October,*
1820.

Lynde
*v.*
Denison.

*Middlesex,*
October,
1820.

Lynde
*v.*
Denison.

explained, is a fact, from which payment of a sum demanded, ought to be presumed. *Phill. Ev.* 114. *Bailey* v. *Jackson*, 16 *Johns. Rep.* 210. To cite cases in support of a proposition so firmly established, is quite superfluous. A period of more than twenty years had elapsed, from the date of the bond in question, which was payable on demand, before the institution of the plaintiff's suit, and, by legal consequence, the demand was extinguished, unless the presumption is repelled, by facts appearing in the case.

It has been said, that the omission to aver a specific demand, made by Mrs. *Williams*, for the conveyance of the land specified in the condition of the bond, shows, that no cause of action ever arose, and of consequence, that there has been no lapse of time, within the meaning of the law. Waiving answers to this remark, both obvious and conclusive, that this question was not agitated at the circuit; that if payment may be presumed from the lapse of time, *a fortiori*, a demand is presumable, which it was the interest of Mrs. *Williams* to make; and that, if there is no cause of action on the bond, the judgment for the defendant is obviously right; on this point, it is indisputable, that it was settled by the verdict of the jury. They were informed, that the presumption of payment arose, after the lapse of twenty years, " from the accruing of the cause of action;" and having found the bond to have been paid, they must have found, that there was a cause of action existing on it, before the commencement of the lapsed period, on which they rested their decision.

2. In discussing the enquiry, concerning the legal effect of the disability of the femes covert, I shall first suppose, what I take to be untrue, that they have a personal interest in the bond in question. The distinction between the *bar*, resulting from the statutes of limitation, on the subject of incapacity, and the presumption of payment from efflux of time, must constantly be retained in mind. The former is a positive impediment, while the latter is no bar, but is merely evidence of payment, inferred from the omission to make demand within a certain period. The principle of presumption alluded to, is rational, and may successfully be rebutted, by facts, which destroy the reason of the rule. *Dunlop* & Co. v. *Ball*, 2 *Cranch*, 184. Now, what is this reason? It is, that a remedy existed for so long a period, which a person, not under any

disability, had an interest in enforcing, and which he omitted to enforce, as to convince the mind, that the demand, in some mode, has been satisfied.   If the person was under an incapacity, and *no remedy* existed, for a given period, this period must be expunged.   But if there were two joint obligees, and one of them was deprived of reason, or, through any other cause, had been disabled, this would constitute no ground to repel the presumption, if the other co-obligee had been under no disability.   The remedy would have been unimpaired; and the mind would be equally convinced, from lapse of time, that the debt had been satisfied, as if both the co-obligees had been capable of suing.   In the case before us, the married women could not sue, but their husbands could, and to do this, they had the highest personal interest.   The money, when obtained, would be theirs; and they would be shielded from the contingency of their wives' death, which effectually would terminate their expectations.   Had the femes covert been capable of suing, the presumption of payment would not have been encreased.   Their interest to sue, could not be greater than that of their husbands, and their omission could be placed on no other foundation than theirs, nor lead the mind to any other result.   Suppose there were no law of limitation, and a note had been given, payable on demand, to two partners, more than twenty years since.   This efflux of time, unexplained, would be presumptive evidence of payment.   Admit, however, that for ten years of this period, one of the partners had been a lunatic, but the other, who was the acting partner, had been free from any disability; would the presumption of payment be repelled ?  I think not; because there had always existed a plenary and unimpaired remedy.   The same observation is equally applicable to the case under discussion.

From the execution of the bond, to the commencement of the plaintiff's suit, a period of thirty years, there never existed a moment, save the short interval, which elapsed from the death of Mrs. *Williams*, to the taking out of administration on her estate, when there was not a person able to sue, and interested in bringing suit; and on this basis results the presumption of payment, or performance, as a necessary and irrefutable legal consequence.

*Middlesex,*
October,
1820.

Lynde
*v.*
Denison.

I shall now place this point on what I take to be its true ground. The femes covert never had any interest in the bond, and were only the *media,* through which it was transmitted to their husbands. If this proposition is correct, the disability of the married women, is precisely as irrelevant, as if the bond had been executed to their husbands by name. In *Griswold* v. *Penniman,* 2 *Conn. Rep.* 564., it was adjudged, by this court, that *choses in action,* accruing to a wife during coverture, vest unconditionally in the husband. The case was this : *Joshua Starr* died intestate, leaving personal estate, and several children, one of whom was the defendant, *Mary Penniman,* then wife of *John Penniman* ; but no distribution was made to the heirs, until after the death of *John Penniman.* On his decease, the defendant, *Mary Penniman,* took administration on his estate, and gave the bond on which suit was brought, for the faithful performance of her trust. The breach relied on was, that she had not inventoried, as the estate of *John Penniman,* that portion of the estate of *Joshua Starr,* consisting of personal property, which was distributed to her as one of his heirs. The plaintiff contended, that this property, on the death of *Joshua Starr,* vested absolutely in the husband. The defendants insisted, that it vested in *Mary Penniman,* as a *chose in action,* not reduced to possession, and so remained during the coverture. The opinion of the court was in favour of the plaintiff. In assigning the reasons of the court, it was said by *Swift,* Ch. J.—" If the estate left by the father of Mrs. *Penniman,* was chattels personal in possession, then they vested, at the time of his death, in her husband. If he left debts, which it was the duty of his administrator to collect, these would be *choses in action,* which, by the common law, vested in the husband, on the death of her father." The latter is precisely the case now before the court. From this determination it results, conclusively, that, on the death of Mrs. *Williams,* the bond became the property of the husbands ; and thus the argument, founded on the disability of their wives, is without any foundation.

3. The condition of the bond in question, being for the conveyance of real estate, causes no difference in the result of this case. It has been contended, that the contract, being essentially for the conveyance of land, did not vest in the hus-

*Middlesex,*
October,
1820.

Lynde
*v.*
Denison.

bands of the femes covert ; but, in my judgment, this is a gratuitous assertion. The bond is a *chose in action* ; and so far as the remedy at law is concerned, which is the only enquiry before the court, the legal right vested in them absolutely. By the non-performance of the condition, the bond became single, and is not distinguishable from a similar contract without condition. The same remark would be equally true and applicable, to a covenant for the conveyance of land, made to Mrs. *Williams,* and broken before her death. On breach of the covenant, the right to damages would accrue to the husbands. What a court of chancery would do, on an application for a specific performance, it is unnecessary to determine ; as in a court of law, legal considerations are alone available. " We have nothing to do, in this place, with any other than legal rights." *Wake* v. *Tinkler,* 16 *East,* 36. The plaintiff's claim is founded on the neglect of the administrator, to collect and pay a sum of money ; nor will it be pretended, that there ever rested any duty on him, to apply for a specific execution of the contract, in favour of the married women. I will, however, barely observe, that all the impediments, which press against the plaintiff's demand in a court of law, would, in plenary force, exist in chancery, with others, peculiar to the administration of justice in the latter court. *Clifton* v. *Taylor,* 1 *Madd. Chan.* 329. *Smith* v. *Clay, Amb. Rep.* 645. 1 *Madd. Chan.* 79. 329.

4. As the defendant has pleaded, that the bond in question was paid and satisfied, and not that it was released, it remains to be considered, whether the lapse of time is evidence of a release only, and not of satisfaction. I confess myself incapable of perceiving the ground of this distinction. I entertain no doubt, that a release ought to have been presumed, had the defence been placed on that ground. But the legal presumption, resulting from time elapsed, does not operate in any specific direction. The principle was adopted for the furtherance of justice, and the sake of peace, and will support any set of facts, which extinguish the ancient demand ; and more especially, is it available to show, that the condition of the bond has been performed, the most probable of all possible facts. A release might not have been given ; but the long continued and unexplained omission to make demand, is best accounted for, by the probable supposition, that the condition

*Middlesex,*
*October,*
*1820.*

Lynde
*v.*
Denison.

of the bond was actually performed, in the life-time of Mrs. *Williams,* or the hundred pounds received, and the specific execution of the contract relinquished.

I have been not a little diverted, by the exhibition of considerable zeal in behalf of the femes covert personally, lest they should be deprived of the fruits of the bond, and all this to sustain a suit at law, virtually in favour of their husbands, on the success of which, the women will forever lose all hope of personal benefit. Of doing injustice to those who have had vigilant guardians, eagle-eyed to appropriate to themselves the penalty of the bond, I am not afraid ; but I am very apprehensive, that, by a judgment on the bond against the defendant, he will be subjected to make a double satisfaction.

BRAINARD, J. was of the same opinion.

CHAPMAN, J. Though the action, in this case, is on the probate bond, yet in substance, it is an action on the original bond, and must be governed by the same rules.

The question, then, is, whether twenty years can be given in evidence, to create a legal presumption of there having been a performance of the condition of the last-mentioned bond, under the circumstances of this case. It is material to observe, that the defendant relies on having conveyed the land, according to the condition of the bond, and not on having paid the penalty. The objection is, that the *real* plaintiffs have been, during the time, or most of it, under coverture, and that, therefore, as against them, lapse of time creates no presumption of performance. It is not denied, that lapse of time may be given in evidence, to prove payment or performance of a condition ; but as the law is now understood, it requires twenty years, at the least ; and during the whole of that time, as I conceive, the plaintiff must have had the power of prosecuting his claim. If he has been beyond sea, insane, &c. the presumption ceases to exist, though any number of years have elapsed. This presumption is not grounded on any supposed punctuality of the defendant, in paying his debts, or performing his contracts ; but it is founded entirely on the fact, that the plaintiff has the power of compelling a performance, and after a lapse of twenty years, the law will presume he has done it, unless he repels this presumption, by proof of disability, on

his part, or by some other proper evidence, though that which is very slight, will be sufficient.

It is admitted, that the claimants, in this case, were under a disability ; but it is said, their husbands were not.—True ; but they did not own the land.   In equity, their wives owned it ; and had they been under no disability, might, at any time, have compelled the defendant to convey it.   Their husbands had an interest to recover the penalty, paramount to that of having the condition performed ; for, in the first case, they would have been entitled to the whole money, but in the last, they could, at most, have been tenants for life.   The presumption, therefore, that a conveyance was ever made, is, if any thing, extremely slight.—Besides, these presumptions are made to operate against those persons *only*, who are guilty of *laches*.   Here, those who have the principal interest, are to be affected by the laches of those, who have a minor one, and over whom they have no controul.

In statutes of limitation, a proviso is almost always introduced, excepting femes covert from their operation.   This is not, indeed, decisive ; but, in my mind, it is a strong argument against permitting lapse of time to deprive persons of their rights, when they are incapable of asserting them.

In analogous cases, this doctrine, I think, would not be contended for.   Suppose the land of a feme covert should be overflowed, by the erection of a mill-dam below, and should continue so for more than fifteen years ; would she lose her right to it ? Upon the principle contended for by the defendant, she would ; and yet should she be disseised of her land, and continue so, for more than fifteen years, her rights would be saved, by the proviso in the statute.   All the arguments in favour of the presumption, in this case, will apply, with their full force, to the acquisition of all incorporeal hereditaments, by user, against femes covert ; for in every supposable case, their husbands may prosecute.   It is no answer to say, that another can vindicate my rights, unless I have a controul over him.   The question always is, has the person claiming, been guilty of laches ?

I think, therefore, that the principle adopted in the charge, is equally novel and incorrect.

PETERS and BRIRTOL, Js. were of the same opinion.

New trial to be granted.