White, J.
The relators in these cases re-enlisted as veteran volunteers, under requisitions of the President of the United States during the late rebellion. Bates was credited upon the quota of Richland Township, and Boyer upon the quota of the city of Circleville. Neither received any local *368 bounty; and tbe object of these suits is to compel the defendants by mandamus to pay the bounty to which the relators respectively claim to be entitled under certain acts of the' general assembly.
The claim of Bates is founded on .the act of April 6, 1866,. entitled “ An act to amend an act to provide a bounty for veteran volunteers,’ passed April 13, 1865” (63 O. L. 188);; that of Boyer on “An act to authorize and require the payment of bounties to veteran volunteers,” passed April 16, 1867. 64 O. L. 232.
So far as affects the question in these cases the acts are substantially alike. The first section of the act first named provides : “ That the commissioners of the several counties, the trustees of the several townships, and the city councils of the several cities of this State, are hereby authorized and required to issue to each re-enlisted veteran volunteer, who has been heretofore credited upon the quota of such county,, township, or city, or any ward of such city, under any requisition of the President of the United States for volunteers, during the late rebellion, and who has not received any local bounty upon said re-enlistment, a bond for the sum of one hundred dollars, bearing six per cent.-interest, redeemable,” etc.
This act is imperative in its terms, and cannot be limited,, as contended for in argument, as applying only to cases where the enlistment was made on the faith of a promise of bounty by the public authorities of the locality receiving the credit on its quota.
Under the authority of the act of Congress, the military force required was apportioned to the several localities; and. where the quotas were not furnished by volunteers, the deficiency was to be supplied from the inhabitants by draft.
The plain intent of the acts in question is to provide a bounty of a hundred dollars for all those who, by re-enlisting, had contributed to relieve the locality from draft, and who' had not otherwise received a local bounty, irrespective of assurances by the local authorities inducing the enlistment.
The only remaining objection to granting the writs of. *369 mandamus is, that the acts of the legislature on which the applications of the relators are founded are in violation of sec. 28, art. 2, of the constitution, which prohibits the passing' of retroactive laws.
This objection was made to another statute belonging to-the same class as those now in question, in the case of The State ex rel. Anderson v. Harris et al. (17 Ohio St. 608), and was held by the court to be invalid. It was said in that case that the validity of the law did not depend on the existence of power in the legislature to create a contract between-the county and the volunteers; nor was it an act which impaired vested rights, or the validity of contracts. The authority for the act was found in the general grant of legislative power, which includes taxation in all its forms, botbi general and local, unless restrained by other parts of the constitution.
The duty imposed upon the municipal subdivisions of the State does not arise out of any contract relation supposed to* exist between them and the volunteers; but is devolved upon them by the legislature in the exercise of the taxing power of the State, and of the power of apportioning taxation.
The only question is whether the legislature in exercising this power transcended their authority.
A law designed to raise money by taxation for a public-object, and in the performance of what the legislature, from, a sense of justice, regard as a public duty, and which operates equally upon all, cannot be regarded as a retroactive law-
This is apparent from a consideration of the section of the-constitution already referred to, in connection with the 29th section of the same article.
The inhibition contained in section 28, against the passing: of retroactive laws, is absolute. “ The general assembly shall have no power to pass retroactive laws.” Yet, notwithstanding this denial of power to pass retroactive laws, the power of the legislature to pass laws to provide for and pay claims, which have no legal foundation, is clearly recognized in section 29; provided such laws receive the assent of the requisite number of members of the legislative body.
*370 The tax provided for in the laws in question is to be raised for a public object, and in the discharge of what the legislature regarded as a public duty towards those who had, by voluntarily entering the military service, contributed to fill the quota of the State and save it from the consequences of a forced draft.
A large proportion of this class had received bounties in various sums, while many had received nothing; and as all had rendered equal service, it was regarded as but just that some rule of uniform operation should be adopted on the subject.
It certainly would have been competent for the legislature, with the concurrence of the requisite number of members, to have levied the tax to pay these bounties, by a general law, on all the property of the State, and to have made the payment directly from the State treasury.
This was held by this court in Cass Township v. Dillon, 16 Ohio St. 39.
The same principle has been decided in regard to similar laws by the supreme court of Massachusetts in the case of The City of Lowell v. Oliver (8 Allen, 247), and in Freeland et al. v. Hastings et al. (10 Allen, 579); also by the supreme court of Connecticut, in the case of Booth v. Town of Woodberry (32 Conn. 118).
Instead, however, of exercising the power directly, the legislature imposed the duty upon the several municipal subdivisions of the State, on which the burden of furnishing the necessary military force had been devolved.
The object of adopting this mode of apportionment was the better to equalize the burden of the tax. In some places the men credited to that locality had been paid bounties from voluntary contributions, and it was not deemed equitable to tax such localities to raise money to pay bounties to the men credited to others.
That such was the purpose of these statutes, is apparent from their provisions. Where the credit was to the State, the bounty is required to be paid from the State treasury; *371 •where it was to the county, township, or city, the bounty is to be raised from the locality receiving the credit.
The counties, townships, and cities are public agencies in the system of the State government; and, in the class of laws now under consideration, they are employed by the legislature as mere instrumentalities to raise a tax for a public object, and to effect its equitable distribution among those for whom.it was intended.
We cannot say that the legislature, in adopting this course, transcended their constitutional authority.
We may remark that the decision in the case of Washington County v. Berwick (56 Penn. St. 472), cited in argument, turned on the construction of the statutes of Pennsylvania, under which, as the court held, no one was entitled to bounty Unless he volunteered upon an offer of bounty by the public authorities — which offer, though without authority ©f law when made, had by subsequent legislation been legalized.
As already stated, we do not think the statutes now under consideration can be so limited.
The answers to the alternative writs disclosing no legal defence, a peremptory writ is now granted in each case.
Scott, C.J., and Welch, Day, and McIlyaine, JJ., concurred.