JOHN O'CONNOR vs. THE TOWN OF WATERBURY.

Third Judicial District, Bridgeport, April Term, 1897. ANDREWS, C. J., TORRANCE, FENN, BALDWIN AND HAMERSLEY, JS.

Chapter 318 of the Public Acts of 1895 concerning soldiers' bounties is limited to volunteers, and does not apply to men forced into the army or navy by draft.

Payment of a soldier's bounty ought to be presumed after an unexplained delay of twenty years or more to sue for its recovery. Under these circumstances a new promise or vote of the town to allow the soldier's claim is not obligatory upon it, unless the right to pass such vote was specially authorized by the legislature.

Towns have no authority to subject their citizens to taxation, except for purposes clearly authorized by law.

[Argued April 22d—decided May 25th, 1897.]

ACTION to recover the amount of a soldier's bounty, brought to the District Court of Waterbury and reserved by that court, *Bradstreet, J.*, upon demurrer to the complaint, for the consideration and advice of this court. *Judgment sustaining demurrer advised.*

The amended complaint is as follows: "1. On August 22d, 1863, the plaintiff was a legal resident of said town of Waterbury.    2. On said day the plaintiff was duly and legally drafted from amongst the residents of said town into the military service of the United States, under and in pursuance to the provisions of the Act of Congress which provided for the enrolling and calling out the national forces. 3. On November 5th, 1864, the plaintiff was examined, found fit for duty, and mustered into the military service of the United States under the provisions of said Act.    4. The plaintiff remained in said service until April 28th, 1865, when he was honorably discharged by the proper officers of the government.    5. After being drafted and mustered into said service the plaintiff was credited to and was applied on the quota of said town, and assisted in filling said quota under the provisions of said Act of Congress, and was of great and substantial benefit to said town in relieving it from draft under the provisions of said Act.    6. On August 4th, 1863, at a meeting of the legal voters of said town legally warned and held for that purpose, it was voted: ' That the sum of three hundred dollars be paid by the treasurer of this town, out of moneys to be raised, to each person who shall be drafted from this town in accordance with the provisions of an Act of Congress for enrolling and calling out the national forces, who shall be found liable to serve by the board of enrollment provided for by said Act.'    7. On September 5th, 1863, at a meeting of the legal voters of said town legally warned and held for that purpose, it was voted: ' That three hundred dollars shall be paid to each person who is or may hereafter be drafted to fill the quota now called for by the government from this town, and who shall be liable to answer to said draft in one of the three ways provided by the law, in case such person shall elect to abide said draft or shall furnish a substitute, to be paid when such person or substitute shall have been accepted and mustered into the service of the United States.'    8. On the third Monday of January, to wit, on the 18th day of January, 1864, at a meeting of the legal voters of said town legally warned and held

for that purpose, it was voted: 'To confirm the doings of the town meeting held on September 5th, 1863, in voting that three hundred dollars shall be paid to each person who is or may hereafter be drafted, and all of the other votes passed at said meeting of September 5th, 1863, promising aid or appropriating money to drafted men, were legalized and confirmed.' 8½. On August 13th, 1864, at a legal meeting of the voters of the town of Waterbury legally warned and held for that purpose, it was voted: 'That the selectmen be and are hereby authorized to pay or to draw their orders on the town treasury for the sum of three hundred dollars in favor of each person who may be drafted and held under such draft, and who shall be accepted and mustered into the service of the United States, upon the quota of this town.' 9. On October 5th, 1896, at a meeting of the legal voters of said town legally warned and held for that purpose, it was voted: 'That the plaintiff's claim for bounty due to him from the town be allowed with interest.' 10. The defendant has never paid the whole or any part of said bounty, or the interest thereon, and the same with said interest is still due."

The defendant demurred to the complaint, because: "1. The town was not authorized by law on August 4th, 1863, to pay bounties to a drafted man. 2. The town was not authorized by law on September 5th, 1863, to pay bounties to a drafted man. 3. The town was not authorized by law on the third Monday of January, 1864, to confirm and make legal and binding upon the town the bounty voted to drafted men at the meeting of September 5th, 1863. 4. The Special Acts of the legislature authorizing towns to confirm the illegal votes paying bounties to drafted men, were and are unconstitutional and void, in that they grant exclusive emolument and privileges to a class who by law are not entitled thereto. 5. It is the duty of Congress and not of the State of Connecticut or of the town of Waterbury, to provide for the public defense. 6. The Public Act of 1895 did not authorize towns to pay back bounties to drafted men. 7. The plaintiff is not entitled, on the facts stated in the complaint,

to the interest prayed for, or to any interest whatever.   8. On
the facts stated in the complaint the bounty prayed for
appears to have been long since outlawed, and a recovery
thereof is barred by a lapse of time.   9. The Act of 1895
providing for the enforcement of bounty claims against
towns is unconstitutional and void, in that by an arbitrary
removal of the statute of limitations as a plea in bar it thereby
gives to contracts with one class of men a privilege which is
denied by law to the parties to ordinary contracts.   10. The
vote of October 5th, 1896, was void, because it sought to con-
firm a claim resting upon votes themselves void, or, if valid,
a claim which appears to have been outlawed for many years,
and hence said vote was *ultra vires*, and of no binding force
or validity."

*Greene Kendrick*, for the defendant, in support of the de-
murrer.

*John O'Neill*, for the plaintiff, in opposition to the demurrer.

ANDREWS, C. J.   It is clear that the plaintiff is not entitled
to recover in this action by reason of the Act of 1895\*.   That
Act is limited to enlisted men.   The plaintiff was not an
enlisted man.   The legislature might be very willing to ex-
tend a favor to one who entered the army or navy voluntarily,

---

\* The 1st and 2d sections of Chap. 318 of the Public Acts of 1895, are as
follows: "Section 1. Any person who enlisted or re-enlisted in the army
or navy of the United States for the suppression of the rebellion, and who
was honorably discharged from service, and who thereby became entitled
to any bounty voted by any town and has not heretofore received the same,
may recover from such town the amount of any such bounty in an action
upon this statute.   Any such person shall be entitled to judgment against
a town upon proof from the records of the adjutant-general's office by a
certificate duly attested by the adjutant-general or his assistant, that he
was duly enlisted and credited to such town and that such a vote has been
passed by the town, and where a town has been divided or a portion of a
town has been set off to another town since such enlistment, the claim
shall be against the town now containing the territory within which such
soldier or sailor resided at the time of his enlistment.

"Sec. 2. The statute of limitations shall not be pleaded by the defendant
in any such action."

and be very unwilling to extend a like favor to one who entered the army or navy only because he was dragged there by force. Besides, the complaint is not brought on that statute, according to the rule laid down in 1 Swift's Dig. (side pages) 585, 735. It is immaterial, therefore, so far as this case is concerned, to inquire whether or not the said statute is constitutional.

The latest date at which the plaintiff's cause of action can be said to have accrued, was November 5th, 1864, when he was mustered into service. This suit was commenced on January 2d, 1897, a period of more than thirty-two years after the right of action existed. CHIEF JUSTICE HOSMER said, in *Lynde* v. *Denison*, 3 Conn. 387, 391: " A forbearance for the period of twenty years, when unexplained, is a fact, from which payment of a sum demanded, ought to be presumed." He cites Phillips' Evidence, 114, and *Bailey* v. *Jackson*, 16 Johns. Rep. 210. This rule has been approved in *Chapman* v. *Loomis*, 36 Conn. 459, and in *Fanton* v. *Middlebrook*, 50 id. 44. The plaintiff argues that advantage of the statute of limitations cannot be taken by demurrer. He states, and rightly, that the objection to this mode of pleading is that it raises no issue. It deprives the plaintiff of an opportunity to reply a new promise, or an acknowledgment. The complaint in this case, as if expecting the statute of limitations to be set up in answer, seeks to reply to it in advance by alleging the new promise contained in the vote of the defendant town of October 5th, 1896. It is to the whole complaint that the demurrer here is interposed.

The exact question presented by the pleadings in the case can best be understood by separating the averments. It appears on the face of the complaint, that between the date when the cause of action accrued and the commencement of the action, a period of time had elapsed from which the payment of the plaintiff's claim would be presumed. Let us suppose the defendant to have made an answer alleging that such period of time had intervened ; and then that the plaintiff had, by way of reply, set out the vote of October 5th, 1896, and to that the defendant had demurred. The de-

murrer in the case presents precisely the same question; that is to say: Is the vote of October 5th such a new promise or acknowledgment as removes the bar of the statute of limitations? The complaint purports to set out that vote in its exact words: "That the plaintiff's claim for bounty due to him from the town be allowed with interest." As this action was not commenced till January 2d, 1897, how can the Superior Court or this court know that by the word "plaintiff," in the vote of the town, John O'Connor was intended?

We do not, however, rely on this. Towns have no authority to subject their citizens to taxation, except for purposes clearly authorized by law. If the vote just quoted is a new promise or acknowledgment sufficient to bind the town, then the citizens of that town must be taxed to pay the amount of the claim made by the plaintiff. And the same infirmities would attend the power of the town to subject its citizens to taxation by such a vote, as attended its power to pass the original bounty votes. As those votes would not have been binding on the town except for the special authority conferred by the legislature on the town to pass them, so this new promise does not bind the town for the reason that there has been no authority given by the legislature to the town to make it. *Booth* v. *Woodbury*, 32 Conn. 118; *State ex rel. Coe* v. *Fyler*, 48 id. 145; *Turney* v. *Bridgeport*, 55 id. 412; *White* v. *Stamford*, 37 id. 578.

The District Court is advised that the complaint is insufficient, and to sustain the demurrer.

In this opinion the other judges concurred.