Day v. Cutler.

---

**DAY vs. CUTLER.**

22 625
69 584
69 603

The legislature, as a condition of granting a divorce to H, from S, his wife, required him to pay the sum of five hundred dollars, for her future sup-

port; for which amount he understandingly executed and delivered his promissory note, payable to D, in trust, for S. Held, that such note was not void, as being without consideration and against public policy, and that a verdict of the jury, in favor of the plaintiff, in an action upon said note, ought not to be set aside, for either of these reasons.

THIS was an action, brought to the superior court, for Windham county, on a promissory note, payable to the plaintiff, as trustee for Susan Cutler, the former wife of the defendant.

The defendant pleaded the general issue, with notice of special matter, to be given in evidence.

On the trial, the plaintiff testified, that, after the rising of the general assembly, in 1849, he was informed, by a representative from the town of Pomfret, that there was a note for him, in the office of the secretary of state ; that he sent for said note, some fourteen months after its date; that, in August, 1849, the defendant called on him, in Pomfret, and said he had come to see about that note he had given to the plaintiff, as trustee for the defendant's wife ; that the plaintiff asked what note ; that defendant replied, the note he gave the plaintiff, as trustee, to get a bill of divorce ; that plaintiff told defendant he had not got the note, and did not wish to have anything to do with it ; that defendant said, esquire Tyler told him to let the note go, and not pay it,—it would take care of itself, but that was not the way he did business ; that it was more than he ought to pay, and wished the plaintiff, when he did get the note, to treat the defendant, like a gentleman, and call on him, or notify him, and he, the defendant, would pay the note ; that, in March, 1851, on the day of the date of the writ, the plaintiff called on the defendant, at Plainfield, for payment of said note, which was totally refused by the defendant, and the note was, by the plaintiff, put in suit.

Jonathan A. Welch testified, that, after the commencement of the suit, he met the defendant, who admitted, that he made the note exactly as the plaintiff claimed in the dec-

laration ; that the defendant told him, that Mr. Tyler advised him, that the note could not be collected.

On. cross-examination, he testified : " The defendant said he gave the note, as the condition of his divorce,—did not say who required him to give the note, but gave the witness to understand, that the note was part of the operation of getting the divorce.

The defendant then gave in evidence, 1. the following preamble and resolution of the general assembly, 1839 :

" Upon the petition of Henry Cutler, of Plainfield, in the state of Connecticut : praying for a divorce from his wife, Susan Cutler, on the ground of the insanity of the said Susan, at the time of marriage, which fact was unknown to the said Henry, until after the said marriage ; this assembly, finding the facts stated in said petition to be true, and further finding, that the said Henry has paid to Calvin Day, Esq., of Pomfret, in trust, for the use and benefit of said Susan, the sum of five hundred dollars :

Resolved, by this assembly,—That the marriage relation heretofore subsisting between Henry Cutler and Susan Cutler be, and the same hereby is, dissolved, and the said Henry is hereby released and discharged from all obligations arising out of said contract, and the said Henry is hereby declared to be sole, single, and unmarried."

2. The testimony of Daniel P. Tyler, who testified as follows : That, as counsel for the defendant, he brought the petition for a divorce from his wife, and appeared before the committee on divorces. A report, in favor of the petitioner, passed the senate, on the 18th, and came up in the house, on the 31st day of June, and was negatived ; that he then enquired of sundry members, the reason of the rejection of the resolution, which had passed the senate ; that, before this time, individuals of Killingly and Plainfield had opposed the divorce, on the supposed ground, that the respondent might become chargeable to said towns, if divorced, as a pauper. It was believed, she was an inhabitant of Pom-

fret, and, if divorced, might, as a pauper, become charge-able to that town ; that, after said rejection by said house of representatives, he had conversation upon the subject of said divorce, with a representative from Pomfret, and others, who were desirous something should be done, for the future support of the respondent ; that said Tyler then sent for the defendant, to be at Hartford ; that he came, and after that, it was said by sundry members of the legislature, by said Holt, and others, that if the defendant would give or make the note now in suit, there would be no objections to getting the divorce through ; that the note in suit was then writ-ten,—by whom the witness did not recollect; that witness carried it to defendant and told him, there was a note which he must sign, to get his bill of divorce, and that, if the defend-ant signed it, it would be good for nothing, and that he might sign it with perfect impunity ; that the persons requiring the note, had no authority to order it, or receive it ; that he did not know what then became of the note,—did not recollect who, if any one, received it. It was given by the defend-ant, at the suggestion of individuals, that, if he would sign it, he would get his divorce granted.

3. The defendant testified, that, after the hearing before the divorce committee, the resolution divorcing him passed the senate, and he went home ; that some little time after-ward, he went a second time before the divorce committee, and testified, as to the amount of his property ; that he had a conversation with Mr. Holt, a member of the assembly, who advised him, that it was better to pay the money than be as he was ; that Mr. Tyler handed him a paper to sign, and told him to sign it,—that it could not be collected ; that he signed the note, without knowing the amount of it, or to whom it was payable, or what was in the paper he signed. Mr. Tyler told him it could not be collected, and he signed it. After it was signed, it lay on the table. Mr. Bacon, chairman of the committee, asked Mr. Tyler what he should

do with the note.   Mr. Tyler replied, " Wipe your razor with with it, if you please."

The plaintiff objected to this testimony, but. it was received, by consent of parties, subject to objections to any part thereof, on the argument.

In the argument of the cause, the counsel for the defendant claimed of the court to charge the jury, that, granting the general assembly to have power to grant divorces, on terms of payment of money, or giving a note as claimed to have been given in the present case, the acts and doings of the general assembly, in that behalf, can be shown only by its records and votes, and no part thereof by parol, and not as claimed and attempted to be proved by the plaintiff, in this case ; that no order, agreement, act, or declaration of any committee of said assembly, or any individual members thereof, can be received, as evidence of the act or doing of said general assembly, and so, that all the evidence concerning the giving said note, and the consideration thereof, if there was any, should be, by the jury, laid out of the case, for any purpose for which the plaintiff claimed or offered the same ; and that the same could not, by them, be considered in the case, except for the purpose of showing, that the defendant's claim was true ; and, that said note was given without consideration, was a gratuitous promise, given under a mistaken idea of his legal rights and obligations ; that said note was void, as given in view of the facts proved and admitted, as against public policy, which policy is, among other things, to preserve the purity of the legislature, and the members thereof from bribes, from making private bargains, and agreements to give or withhold votes.

The court did not charge the jury as claimed by defendant, but did allow all said testimony to go to the jury, for the purpose for which it was offered, and did, *pro forma*, charge the jury, that, in order to find a verdict for the plaintiff, the jury must first find, that the note in suit was under-

standingly executed by the defendant, and delivered to the plaintiff, or to some other person for him ; that, if it was delivered to Mr. Bacon, to be by him delivered to the plaintiff, and it had, from him, come into the plaintiff's hands, that was a good delivery.

The court then charged the jury, as follows :

If you find the note to have been understandingly made, and delivered, you will then find what was the consideration of the note ; if it was made, in order to procure the divorce, and because he could not otherwise succeed in that object, then the question will be, whether that, in connection with the further object of making some provision for his wife's support, after the divorce, forms a sufficient consideration for the note. The court is of opinion, that it does form a sufficient consideration. Still, the question arises, whether this was an illegal consideration. Now, if the note was given to procure the vote or votes of some one or more of the individual members of the legislature, that would be an illegal consideration,—being in the nature of a bribe, and would render the note void, and the plaintiff could not recover. But, if it was done in consequence of the action of the whole legislature, as a body, it would not be an illegal transaction. The legislature, having power to grant or refuse the divorce, had power to prescribe the terms on which it would grant it ; and if it required the execution of this note, before it would grant it, the execution of it was legal, and the plaintiff might recover, if he had satisfied the jury, on the point of making and delivery of it.

The jury having rendered a verdict for the plaintiff, the defendant moved for a new trial.

*Tyler* and *Graves*, in support of the motion, contended, that this action can not be sustained, for, 1. The note was founded on a gratuitous promise, and was without consideration. Sto. on Cont., § 429. 9 Conn. R., 57. 5 Barn. & Cress., 501. 3 Pick., 207. 7 Johns. Rep., 26. It was not given

for alimony. The legislature found, that five hundred dollars had been paid, but made no order for alimony ; and no case can be found, where any tribunal has ordered alimony. to be paid to the guilty party.

2. All the plaintiff can claim, is, that the note was given, first, to induce certain members of the legislature, to cease opposition to the divorce ; and secondly, to procure the future separation of the defendant from his wife ; both of which objects leave the note void, as against public policy. 1 Foster's N. H. Rep., 212. Any instrument which contemplates and provides for the future separation of husband and wife, or is calculated to promote a future separation, is not legal. Chitty on Cont., 5 Am. ed., 672. 1 Jacob's Rep., 126. 7 Price, 577. *St. Johns* v. *St. Johns*, 11 Ves., 526. 3 Paige, 483.

*Cleveland* and *Welch*, contra, contended, 1. That the evidence fully sustained the verdict, which appears from the motion for a new trial. But if there were a doubt on this point, the court will not disturb the verdict.

2. That the charge of the judge was unexceptionable, and placed the case on the true ground. As the supreme power, the legislature could prescribe terms for granting a divorce. And the question, whether they did so, or whether individual votes were fraudulently obtained, was left for the jury to decide.

ELLSWORTH, J. This is a motion for a new trial, on the ground, first, that improper evidence was received ; secondly, that the court did not instruct the jury, that the note was without consideration, and void, as against public policy ; and thirdly, because the verdict is against evidence.

As to the first point, it appears, the evidence was received, and the question of its admissibility reserved, until the argument and charge to the jury. At the close of the trial, the defendant's counsel claimed, that " The acts and doings of the general assembly can be shown, only by their rec-

ords and votes." We perceive nothing contrary to this rule, in the ruling of the court. The resolve of the assembly, granting the divorce, counting upon the five hundred dollars, secured by the petitioner, to his wife, is the only one of their acts and doings which was attempted to be proved, and this was in fact proved, by the records of the assembly, introduced by the defendant, himself. The parol testimony, offered by the plaintiff, was offered for another and different purpose.

But, suppose the parol testimony was incorrectly received, and is to be laid out of the case; then there is no cause for a new trial; for then, the case stands thus; the note, good on the face of it, admitted to be well executed, is, of course, sufficient to entitle the plaintiff to recover, if nothing more is proved. The merits of the defence must, we think, be found, if anywhere, in the second and third objections, *viz.*, the note was given without consideration, and moreover, was a bribe; and the verdict was against the proof.

Now, as to consideration, it is obvious the note was given for the five hundred dollars, mentioned in the preamble of the resolution of the assembly. The whole of the testimony in the motion, shows this, and the defendant, in his evidence, admits it. The five hundred dollars, then, is a part of the decree itself: that sum the assembly saw fit to exact, as the condition for granting the divorce asked for. How, then, can the note be said to be gratuitous? The defendant obtained what he thought was an equivalent, and at any rate, it is what he agreed to give; and upon that undertaking, he induced the assembly to grant him a divorce. The note, then, is not objectionable, on the score of consideration.

Nor is there any reason for treating the note as a bribe. Under the charge of the court, the jury have found, that the note was not given to influence the vote or votes of any one or more, of the individual members of the legislature, but to make provision for the wife's future necessities. Can

Day *v.* Cutler.

this be called a bribe, to induce the legislature to act corruptly? Indeed, according to my view, it would have been palpably wrong for them, if they granted the divorce, to have done otherwise. What is this unfortunate man's case? He represents to the legislature, that, blinded by the power of love, he was overreached in the tactics of courtship, and was married through fraud, though his wife, beautiful to his eye, was, at the time, bereft of her reason, and he prays to be helped out of this cheerless and sad dilemma, that he may try his hand once more. He asks to be let loose from any further obligation to support *his wife*,—a questionable affair, at the best, and we must think, a singular ground for legislative interposition; one which we hope will not become a general precedent, to encourage disappointed lovers.

But, if the legislature were in fact, under undue influence, and were bribed to exact this five hundred dollars from the petitioner, is it in the power of the judges to set this matter right? We are not the guardians of this co-ordinate branch of the government; and it is hardly worth while for us to decide, that the legislature were influenced by bribery and corruption, in discharging their public duties. Indeed, it would be no ordinary task, for the court to preserve the legislature from every sinister and unpatriotic consideration addressed to them, by individuals or incorporated bodies. So long as they are authorized to grant divorces, according to their own judgment, they may prescribe the terms and conditions on which they will do it, in the particular case; and whatever party chooses to avail himself or herself of such a decree of divorce, must take it as it is, and the prevailing party has no right to assert, as this defendant does, that, without these conditions, the legislature would ever have found the facts to be true, as this defendant claims they were.

This view is equally decisive, in our judgment, that the

verdict is right and just, and should not be set aside, as against evidence.

We do not advise a new trial.

In this opinion, WAITE, J., concurred. HINMAN, J., having tried the cause in the court below, gave no opinion upon the questions of law, but was not of the opinion that the verdict was against the evidence.

CHURCH, C. J. The questions involved in this case, arise from the action of the general assembly, upon the application of the present defendant, against his former wife, for a divorce.

It may be too late now to discuss the question, whether, since the powers of this government were separated, by the constitution of 1818, and distributed to the distinct executive, legislative and judicial departments, respectively, the general assembly can constitutionally exercise the power of granting divorces. This has been doubted, by some of our best jurists.

I only suggest, in this place, that it has ever appeared to me, that this power is, strictly and properly, a judicial one, and if so, that the legislature, in exercising it, has no greater right than any court of equity, to prescribe terms and conditions upon parties, as the price of its favors.

It was insisted, in the argument, and I understand, conceded by the court, that the execution of the note in question, was either prescribed by the assembly, or sanctioned and approved by its decree. I do not think that the record before us furnishes evidence of this, and I do not see how we can presume it, without great disrespect to that body. Indeed, the parol evidence, which was properly admitted on the trial, shows what the facts were. Individuals,—third persons out of doors, extorted this note, and suggested its being given, to induce the favorable action of the general assembly, upon the defendant's petition. The record shows only, that such a note *had been given*, without disclosing the

object of it, or the facts connected with it. These are its objectionable features.

My objection to the validity of the note in suit, is twofold. It is without consideration, and the transaction out of which it grew, was without the sanction, and against the good policy, of the law.

It is important to remember, that the note was given, in reference to a state of divorce and separation, and not to fulfill any of the obligations arising out of the coverture of the parties. And another controlling fact is, and it seems to have been forgotten, that the petition for the divorce was predicated solely upon the misconduct of the wife,—the fraud which had been practiced by her upon the defendant, inducing the marriage. It was in truth a fraudulent contract. The general assembly, upon investigation, find this charge to be true, and, of itself, a sufficient ground or cause of divorce, and certainly it was.

As an innocent, defrauded and suffering husband, this defendant was not under either a legal or a moral obligation, to give alimony, or furnish support to a guilty and divorced woman,—a person no longer to be his wife. Alimony was never, in this state, decreed to be paid, by the innocent to the guilty party, upon the granting of a bill of divorce.

If, then, there was neither a legal nor a moral obligation upon the defendant, to furnish his former wife with her maintenance and support, in future, where was the consideration for his promise to do it, by the execution of this note for that purpose?

The note was given, as I claim, only to induce the general assembly to do that, which the facts proved, showed that it was their duty to have done without it. In this respect, it is like the case of a promise, to pay an officer extra fees or compensation, for doing what his official duty required him to perform, without such compensation.

I think the jury mistook the evidence, in believing that it proved a good consideration for the note.

But the evidence in the case, as I understand it, on the contrary, proved, that the note was executed for purposes inconsistent with the policy of our laws, and is therefore void.

A contract which can prevent or impede the due course of public justice, is invalid, as being opposed to public policy. Chit. on Con., 678. A contract to procure, or endeavor to procure, the passage of an act of the legislature, by sinister means, or even· by using a personal influence with members, would be void, as being inconsistent with public policy and the integrity of political institutions. *Wood* v. *McCann*, 6 Dana, 366. 10 Barb. Sup. Ct. Rep., 489.

I do not suppose that there was any intention to bribe the legislature, or any member of it ; nor that any member was bribed to sustain the application for divorce. If the parties to the negotiation intended to use, or if the note was used, for such a purpose, this would have been something more than an act opposed to the policy of the law,—it would constitute an overt act of crime.

But the objection is, that the note was procured by extraneous management, and for the controlling purpose of being brought to bear upon the legislation of the general assembly, and furnished a motive of action to members, foreign to the merits of the application for divorce. Such was the leading object of the note, and I can not but see that the intended effect was produced, and the divorce granted by reason of it. The senate had granted the petition,—the house of representatives had rejected it,—the outside arrangement between the defendant and certain members of that house, and the counsel employed, was entered into ; and upon this, the note was given, the house of representatives reconsidered its former vote, and granted the bill of divorce ! Can it be claimed by any body, that such a practice is consistent with sound policy and safe legislation ?

The simple truth of the matter, in my judgment, is this : if the petition had merits, it was the duty of the house of representatives, to grant it, and if it had not, it should

Day *v*. Cutler.

have been rejected ; and the execution and delivery of this note did not change, and could not have changed or enlarged, the grounds of the petitioner's complaint against his wife. The house of representatives had no political or moral right, to yield to the foreign motive presented to them.

Nothing is better understood, in our judicial proceedings, than that, in applications for divorce, the courts give no countenance to combinations or concert between the parties themselves ; and whenever this is discovered, the application is frowned upon, and discarded at once. And the objection is as strong, to concert or combination to procure the same result, when practiced by others, as by the parties to the petition. The agreement or consent of parties, or their friends, will have no effect to procure a divorce, where a real and well established cause does not exist, and is not proved.

Marriage has, very unfortunately, as I think, been called a merely civil contract ; and this estimate of it has, in my opinion, done much to unsettle the permanency of the relation. But, so much of the peace, happiness and prosperity of the parties, their children, and society itself, depends upon this institution, that, in Christian countries, it has not anywhere, *as yet*, been brought down to the low level of a mere property bargain, from which the parties may recede at pleasure. Marriage is yet the great conservative institution, which preserves society and everything in it, which we ought to love and protect ; and if any of us have, for this cause, denominated it, *holy wedlock*, I feel that we do not deserve censure for this. Although it is so far a civil contract, as to be properly subject to the regulation of civil or municipal laws, and the control of civil courts, yet, of all contracts, this should be guarded with the most scrupulous care, and no countenance given to any improper movements, to dissolve it ;—and all contracts, having this purpose in view, should be discountenanced, as subversive of the soundest policy.

I do not claim, for courts, any power over the constitutional

action of the legislature; but I do insist, that there is a power in courts over the contracts of parties, which have a tendency, and are in truth intended, improperly to influence the action of the legislature. And all such, I hold to be void, as against the policy of the law. I understand the court to say, that this application for divorce " was a questionable affair, after all ;" and therefore, that it was the duty of the general assembly to require this note to be given. Upon what evidence in the case this opinion is predicated, I am not aware. The decree and finding of the assembly, speak differently. But yielding this, then it is apparent, that the delivery of this note induced the general assembly to do an act of doubtful propriety. Can this be conformable with sound policy? The case of *Sayles* v. *Sayles*, 1 Foster's N. H. R., 312, (Vol. 1 Livingston's Law Mag., p. 102,) is in strong analogy with this. The action was upon a note, given to induce a wife to withdraw her opposition to an application against her, for a divorce. The court there says, as I say in this case, that "it may well be inferred, from the fact of the agreement, that it was the belief of both parties, that no divorce would have been granted, if full defence had been made." And it was held, that such an agreement could not form a valid consideration of the note, and that it was against sound policy, and void.

And I have lately seen the report of a case, and an able opinion delivered by Peck, president judge of the Ohio common pleas, in the case of *Randolph* v. *Richmond,* in Vinton county, and published at the unanimous request of the bar; which I think sustains the views I have expressed, and treats all lobbying practices as improper, and all contracts growing out of them as void. It was an action on a note, given to induce one to attend the sittings of the Ohio legislature, and use his influence with members, to procure the division of a county, and to oppose all adverse movements; and this was adjudged to be a void note. as being upon an arrangement which was opposed to good policy.

I think it is not too much to say, that, in private applications by party against party, at least, legislators like jurors should derive their proofs, and their motives of action, from legitimate and unprejudiced sources; and efforts by individuals, out of doors, tending in a different direction, are opposed to good policy; and, indeed, I would not give legal countenance to any street influences, brought to bear upon members of a legislature.

I am compelled, for the reasons I have suggested, to dissent from the views expressed by a majority of my brethren.

In this opinion, Storrs, J., concurred.