<hr />

FRANCES E. WHEELER'S APPEAL FROM PROBATE.

The commissioners on an insolvent estate of a deceased person made their report
and no appeal was taken within the twenty one days allowed by law.  A
month after the time for appealing had expired the General Assembly passed
a special act allowing appeals to be taken from the doings of the commissioners
on that estate within twenty-one days after the rising of the Assembly.  Held
that the act was constitutional and valid.

The act (Gen. Statutes, tit. 18, chap. 11, sec. 15,) allowing appeals from probate
to be taken to the "next term of the Superior Court," is not repealed by the
acts of 1876, (Session Laws of 1876, p. 100, sec. 3,) and of 1877, (Session
Laws of 1877, pp. 182, 202,) which allow appeals from probate to be taken to
the Superior Court on the first Tuesday of every month except July and
August.

APPEAL from the doings of commissioners on the estate of George B. Wheeler, deceased, in allowing a claim of one Antoinette M. Wheeler; brought to the Superior Court in New Haven County. The report of the commissioners was returned to the probate court on the first day of February, 1877, and the appeal was taken on the 12th day of April, 1877, and to the Superior Court to be holden on the 2d Tuesday of September, 1877.

The appellee pleaded in abatement—1st, that the appeal was improperly taken to that term of the court; and 2d, that it was taken more than twenty-one days after the return of the commissioners' report. The appellant demurred to the first part of the plea, and replied to the second part, that the General Assembly, at its January session, 1877, by a resolution approved March 22, 1877, authorized an appeal to be taken from the doings of the commissioners on said estate at any time within twenty-one days after the rising of the Assembly, and that the appeal was taken within that time. To this replication the appellee demurred.

The case upon these pleadings was reserved for the advice of this court.

The following is the resolution of the General Assembly referred to:

"GENERAL ASSEMBLY, JANUARY SESSION, 1877.

"Concerning Estate of George B. Wheeler.

" *Resolved by this Assembly*, that appeals may be taken from the doings of the commissioners upon the estate of George B. Wheeler, late of Milford, deceased, at any time within twenty-one days from the rising of the General Assembly."

*A. S. Treat* and *C. Sherwood*, for appellant.

*First.* The appellee claims that the appeal should abate because there were more than fifteen weeks from the date of the appeal to the term of the court to which it was taken. Prior to 1877 appeals from probate were required to be taken, as this was, to the *next term* of the Superior Court. . In 1876 it was enacted that process in civil actions might be brought

before the Superior Court in this county on the first Tuesday
of every month, except July and August, provided the return
was not more than eleven weeks from the date of such
process; and in 1877 the time was extended from eleven to
fifteen weeks. It was also enacted that the words "process
in civil actions" should be held to include appeals from pro-
bate, and that such appeals might be taken to the Superior
Court on the first Tuesday of each month, except July and
August, as well as to the next term, without any limitation in
regard to the return day. So that now, we contend, appeals
may be taken either way at the option of the appellant.

*Second.* It is claimed that the resolution of the General
Assembly is unconstitutional. If so it must be for some one
or more of three reasons: 1st. That it affects and impairs
vested rights. 2d. That it is an act of special legislation.
3d. Or that it is a judicial act.

1. The rights of creditors are not vested if a new trial
may be had. This appeal is in effect a new trial. Rights
apparently vested may be impaired if it be manifestly just.
*Goshen* v. *Stonington*, 4 Conn., 222; *City of Bridgeport* v.
*Housatonic R. R. Co.*, 15 id., 495; *Lowrey* v. *Gridley*, 30 id.,
458. Our legislature has done this in various ways, and,
among others, by opening the doings of commissioners for
good cause, such as fraud, mistake, &c.; by allowing the
admission of wills to probate after ten years have elapsed; by
granting pardons to criminals and allowing new trials; by
validating appeals from justices of the peace; and by grant-
ing letters of administration after seven years have elapsed.

2. The General Assembly has exercised this power of
special legislation in granting new trials from time immemo-
rial. 1 Swift Dig., 786; *Hamilton* v. *Hempsted*, 3 Day, 338.
It was never conferred upon the courts of probate, and was
not limited by the constitution. *Calder* v. *Bull*, 2 Root, 352;
Const., Art. 5, sec. 1. Where does the power exist but in
the General Assembly? The constitution of Connecticut is
a limitation and not a grant of power. *Starr* v. *Pease*, 8
Conn., 546; *Pratt* v. *Allen*, 13 id., 124; *Lowrey* v. *Gridley*,
30 id., 458. It will not be denied but that the General

Assembly can confer upon courts of probate the power to grant new trials. This power is reserved to them. *Calder* v. *Bull*, supra; *Burch* v. *Newbury*, 10 N. York, 395. Is it any greater exercise of power to grant the new trial directly?

3. Although the act is in its nature judicial, yet the legislature of Connecticut has always exercised the right to enact such laws. *Calder* v. *Bull*, supra; *S. C.*, 3 Dall., 386; *Burch* v. *Newbury*, supra. And in this respect it differs from those of other states. Opening commissions, validating appeals, allowing probate of wills, and granting administration, are acts judicial in their nature, but the right of our legislature to allow them has never been denied. The legislature has the same unlimited power in regard to legislation that the British parliament holds, unless restrained by the constitution. Cooley's Const. Lim., 88. Up to 1801 the legislature exercised judicial as well as legislative powers, and also after the adoption of the constitution when not limited by it. *De Mill* v. *Lockwood*, 3 Blatch., 56. It will not be denied that the legislature could enact a general law granting new trials in such cases; then why not a special law? Art. 5, sec. 1, of our constitution, provides that "the judicial powers of the state shall be vested in a Supreme Court of Errors, a Superior Court, and such other courts as the General Assembly shall from time to time ordain and establish; *the powers and jurisdiction of which courts shall be defined by law;*" thus expressly reserving to the legislature the power to define their powers and jurisdiction. The constitutions of Massachusetts, Maine and New Hampshire do not reserve this power to the legislature. The conclusion then is, that the law of other states, and especially as laid down in *Lewis* v. *Webb*, 3 Greenl., 326, *Holden* v. *James*, 11 Mass., 396, and *Merrill* v. *Sherburne*, 1 Adams, 199, is not authority, and should have little weight with this court. The question must be determined by the principles laid down by this court in former cases, and by the usages and customs of the General Assembly.

4. It is to be presumed that the General Assembly had good reason for enacting the law in question. *Booth* v. *Woodbury*, 32 Conn., 118; *Goshen* v. *Stonington*, supra. This

court will not declare an act of the legislature unconstitutional unless it is clearly so. "It is a well settled principle of judicial construction, that before an act of the legislature ought to be declared unconstitutional its repugnance to the provisions of the constitution should be manifest and free from all reasonable doubt." *Hartford Bridge Co.* v. *Union Ferry Co.*, 29 Conn., 227.

*G. H. Watrous* and *W. B. Stoddard*, for appellee.

1. We contend that this appeal should abate and be dismissed, because it was taken to the Superior Court at its September term, 1877, instead of on the first Tuesday of May or June, 1877. The act of 1876, as amended by that of 1877, is as follows: "All process in civil actions, including appeals from probate, and all appeals which may be taken to the Superior Court in the counties of Hartford, New Haven and Fairfield, may be made returnable, in addition to the first days of the respective civil terms in said counties, on the first Tuesday of any month, except July and August; provided that the return day be not more than fifteen weeks from the date of process, and that service be completed at least twelve days, inclusive, before such return day." This appeal being taken on the 12th day of April, 1877, and made returnable on the second Tuesday of September, 1877, was not returnable fifteen weeks from its date, but more than twenty-one weeks thereafter. All process and appeals should be brought to the first possible court which has jurisdiction of the cause, and if a term or return day intervenes, it is cause of abatement. 1 Swift Dig., 594; *Olmsted* v. *Hoyt*, 4 Day, 436. Especially should all appeals from probate be so returned. The legislature makes them privileged cases.

2. The special act of 1877 authorizing this appeal to be taken after the twenty-one days allowed by the general statute for appeals from probate, is void and confers no powers or rights on this appellant. The general statute regulating such appeals, being the law of the land, and being in force at the time this appeal was taken, the legislature had no power to grant a privilege to this plaintiff that was denied to other

citizens of the state similarly situated.   Cooley's Const. Lim., 392; *Lewis* v. *Webb*, 3 Greenl., 326; *Durham* v. *Lewistown*, 4 id., 140; *Holden* v. *James*, 11 Mass., 396; *Picquot, Appellant*, 5 Pick., 64; *Wally's heirs* v. *Kennedy*, 2 Yerg., 554. At the time this special act was passed, and when the attempted appeal was taken, the defendant had vested rights under the decision of the commissioners—the right to receive a proportionate part of the assets of the estate in payment of her claim.   *Bailey* v. *Bussing*, 37 Conn., 352.   The effect of this act, if valid, is not only to deprive us of vested rights, but is a judicial act by the legislature, granting the plaintiff a new trial of his cause, which is in violation of the 5th article of the constitution of the state.   *Staniford* v. *Barry*, 1 Aik., 314; *Bradford* v. *Brooks*, 2 id., 284; *Hill* v. *Sunderland*, 3 Verm., 507; *Lewis* v. *Webb*, 3 Greenl., 326; *Merrill* v. *Sherburne*, 1 N. Hamp., 199; *Chastellux* v. *Fairchild*, 15 Penn. S. R., 18; *Bagg's Appeal*, 43 id., 512; *Taylor* v. *Place*, 4 R. Isl., 324; *Young* v. *State Bank*, 4 Ind., 301; *Burch* v. *Newbury*, 10 N. York, 375; *Albertson* v. *Landon*, 42 Conn., 209.

LOOMIS, J.   The commissioners on the estate of George B. Wheeler deceased, allowed a claim in favor of the respondent, amounting to thirteen thousand nine hundred and eight dollars, and made and filed their report in due form in the probate court on the first day of February, 1877, and no appeal was taken from the doings of the commissioners within the twenty-one days limited by the law then existing.

But the legislature, upon the petition of the appellant and a hearing of the case, by joint resolution approved March 22d, 1877, passed the following special act:—

" General Assembly, January Session, 1877; Concerning Estate of George B. Wheeler:—

" Resolved by this Assembly that appeals may be taken from the doings of the commissioners upon the estate of George B. Wheeler, late of Milford, deceased, at any time within twenty-one days from the rising of the General Assembly."

Pursuant to the above act the court of probate, on the twelfth day of April, 1877, allowed an appeal in favor of the appellant, an heir-at-law of the deceased, to the Superior Court holden at New Haven on the second Tuesday of September, 1877, which was the next term of the court. There was then in session, however, a term of the Superior Court, which commenced on the first Tuesday in January previous, and which by law was to continue until the Friday preceding the first Tuesday of June following.

The appellee appeared in the Superior Court and filed her plea in abatement, based on two distinct grounds :—1st. Because the appeal was taken to the September term of the Superior Court, to be held more than fifteen weeks from the date of the appeal, when it should have been taken to the Superior Court then in session, on either the first Tuesday of May or the first Tuesday of June next following. 2d. Because the appeal was not taken within twenty-one days after the commissioners' report was filed in the probate court.

To the first ground the appellant demurs, and to the second makes a special replication justifying under the above special act of the legislature, to which replication the appellee demurs.

The questions arising on these pleadings are two : 1st. Was the appeal taken to the proper court? and 2d. Was the law authorizing the appeal valid? And these questions are reserved for the advice of this court.

The answer to the first question depends on the construction of the statutes regulating appeals from probate. The precise question is, whether the provision of the General Statutes, Revision of 1875, p. 390, sec. 15, allowing an appeal to the next term of the Superior Court, was in force at the time in question, or whether it had been repealed by an act passed in 1876, (Session Laws 1876, p. 100, sec. 3,) and by certain acts passed in 1877 (Session Laws, 1877, pages 182 and 202).

When the terms of the courts were re-organized in 1876, the first of these statutes then passed as applicable to three counties, of which New Haven was one, provided for a return

of civil process to the first Tuesday of any month, except July and August, "in addition to the first days of the respective civil terms," with a proviso that the return day be not more than eleven (afterwards altered to fifteen) weeks from the date of the process. By one of the statutes passed in 1877, it was enacted that the words "all process," etc., in the first line of section three in the act of 1876, be held to include appeals from probate; and by the other it was provided that all appeals in the three counties mentioned might be taken to the first Tuesday of every month.

We think the phrase, "in addition to the first days of the respective civil terms," contained in the act of 1876, can only have effect by retaining the privilege conferred by the former law. These words clearly confer an additional privilege, and they fairly reserve the right, at the option of the party, to take his appeal either to the first Tuesday of every month, (except July and August,) or to the regular civil term. Both laws therefore may well stand together.

Having shown that the appeal was taken to the proper court, we come to the second question, which is the important one in the case—Was the special act of the legislature authorizing the appeal valid?

At the outset we must concede that if the act in question should be tested by the decisions of the courts of the other New England states, and the states of New York and Pennsylvania, cited by the counsel for the appellee, it must be declared void. And such a weight of legal authority we should at once accept as conclusive, were it not obvious, from the past history of our own jurisprudence and long continued legislative practice, that we have reserved a much larger field for legislative action than has ever been recognized in the states referred to.

Our divergence in this respect from the jurisprudence of our sister states may be owing in part to the more explicit language restricting the powers of the legislature in the constitutions of many of the states where the leading decisions are found, (to which we will hereafter refer,) and in part, perhaps principally, to the very extensive powers which were

originally conferred on the General Assembly by the charter of Connecticut, and the great confidence which the people of this state always reposed in the wisdom of their "General Court," and to which they have so long been accustomed to resort for the redress of so many grievances.

Among other provisions in the charter we find that the General Court were authorized "to erect and make such judicatories, for the hearing and determining of all actions, causes, matters and things happening within the said Colony or plantation, and which shall be in dispute and depending there, as they shall think fit and convenient, and also from time to time to make, ordain and establish all manner of wholesome and reasonable laws, statutes, ordinances, directions and instructions, not contrary to the laws of this realm of England;" * * * "and for the imposition of lawful fines, mulcts, imprisonments, or other punishments upon offenders and delinquents, according to the course of other corporations within this our kingdom of England, and the same laws, fines, mulcts, and executions to alter, change, revoke, annul, release, or pardon, under their common seal, as by the said General Assembly, or the major part of them, shall be thought fit, and for *the directing, ruling and disposing of all other matters and things* whereby our said people, inhabitants there, may be so religiously, peaceably and civilly governed, as their good life and orderly conversation may win and invite the natives of the country to the knowledge and obedience of the only true God, and the Saviour of mankind and the Christian faith ; which, in our royal intention, and the adventurers' free profession, is the only and principal end of this plantation." Colonial Records of Connecticut, Vol. 2d, p. 8.

Under the authority of this charter our General Assembly exercised executive and judicial, as well as legislative functions, from the earliest times. *Proprietors of White School House* v. *Post*, 31 Conn., 257.

Our colonial records show that one very large branch of legislative business was the hearing and granting of new trials. Colonial Records, Vol. 10 ; 1 Swift Dig., 815; *Calder* v. *Bull*, 2 Root, 350; *Hamilton* v. *Hemsted*, 3 Day, 338.

Upon the adoption of our constitution in 1818, which by article II divided the powers of government into three distinct departments, legislative, executive, and judicial, and confided each to a separate magistracy; and by article V vested the judicial power in certain courts, it was natural, and indeed quite logical, to hold that all judicial functions of the General Assembly were at an end; and this claim was made at an early day, but was not accepted by this court. *Starr* v. *Pease*, 8 Conn., 547; *Day* v. *Cutler*, 22 Conn., 625; *Woodbury* v. *Booth*, 32 Conn., 126.

Now the principles of construction which we apply to the provisions of our constitution are the same that obtain in all our sister states, namely, that the constitution is a limitation, not a grant, of power, and except as limited by express provisions, the legislature is unrestricted in power, and as omnipotent in a legal sense as the British Parliament.

If then an act of the state legislature is not against natural justice, or the national constitution, and it does not appear affirmatively and expressly that there is some provision in the constitution forbidding it, we must hold it to be *intra vires* and valid.

And another well settled principle is, that long continued legislative usage is of controlling weight upon the question of the constitutionality of an act. *People* v. *Dayton*, 55 N. York, 367; *People* v. *Leonard*, 5 Hun, 626; 1 Story on Const., § 408; *McCulloch* v. *Maryland*, 4 Wheat., 401; *Ogden* v. *Saunders*, 12 Wheat., 290.

A reference to the private acts of our legislature will show that it has always exercised without question many judicial or quasi-judicial powers, notwithstanding articles II and V of our constitution.

It has repeatedly granted divorces for causes not sufficient to justify them in the courts. See Private Acts of 1847, 1856, 1865, 1870, and 1874.

It has administered *cy pres* relief in matters of charitable and ordinary trusts. Private Acts of 1868, 1869, 1870, 1871, 1873 and 1875.

It has often admitted wills to probate after ten years, and

granted administration after seven years, and distributed estates and confirmed defective titles; and has repeatedly decreed the sales of lands left by will, so that they could not be alienated, one instance of which was approved by this court in *Linsley* v. *Hubbard*, 44 Conn., 109.

It has authorized a court of probate, upon application of any person interested, and proof that the interests of the estate require it, to appoint some person to continue the business of a co-partnership, dissolved by the death of the partner whose estate was pending before such probate court for settlement. Private Acts of 1865, p. 54.

It has released and discharged a person from a recognizance entered into by him as surety for another before a justice of the peace. Private Acts of 1876, p. 105.

And in one instance, at least, it annulled the judgment of a justice court. Private Acts of 1855, p. 168.

After certain appeals had been taken from certain city assessments to one judge of the court of common pleas, by name, to be heard by him simply as a judge and not as a court, it has authorized the same appeals to be heard and disposed of by another judge, his successor in office. Private Acts of 1875, p. 39.

By a public act passed in 1869, (Session Laws of that year, p. 341,) the legislature validated certain appeals from justices of the peace in Hartford, some having been taken to the City Court, and some to the Superior Court. It would seem that some of these appeals must have been originally void, as taken to the wrong court.

Assuming that this last act was valid, can there be any distinction between a public act, applicable to only one town, validating appeals not authorized at the time by existing laws, and a special act, applicable to one estate only, opening a further door for an appeal from the doings of commissioners, when existing laws did not authorize it ?

We are not called upon now to decide that every act of our legislature referred to is valid. The foregoing references have been adduced to show, in a general way, the practical construction thus given to our constitution. And in view of

past legislative usage, as evidenced by the foregoing instances and many others to be found in our private acts, we may say that our legislature has assumed, since the adoption of the constitution, to have a reserved power to grant relief, for good cause shown, in cases where there is no explicit prohibition in the constitution, and where under existing laws it is not in the power of any court to grant relief. There is now on our statute book (General Statutes, Revision of 1875, p. 79, sec. 3,) an act first passed in 1784, which provides that "no petition shall be preferred to the General Assembly for any relief which any court has power to grant." This by clear implication embodies the sense of successive legislatures for ninety-four years, that if no court has power to grant relief, and justice requires it, and the constitution does not forbid, application may be made to the legislature, even though it calls for the exercise of powers judicial in their nature.

Judge SWIFT, in his "System," Vol. 1, p. 75, printed in 1795, though he found fault with the General Assembly for too freely exercising judicial powers after the same had been vested in the courts, and complained particularly because it had exempted particular cases from the operation of the statute of limitations after it had become a bar, yet he approved of the above statute, and said its true meaning and construction was, "that where a new case happens, that has never been contemplated by a court of law or equity, so as to adopt a rule respecting denying or granting relief, then such omitted case may be the ground of an application to the legislature."

The decision in *Calder* v. *Bull,* 2 Root, 350, though made before the adoption of our constitution, well illustrates the rule that has in general governed our legislative action, after as well as before the adoption of the constitution. It was there held "that the power of granting new trials was ever exercised by the General Assembly, and when in 1780 they invested the power of granting new trials in the Superior and County Courts in cases which came before them, they reserved the power of granting new trials in all other courts;"

and this case was affirmed in the Supreme Court of the United States in 3 Dallas, 386. The power which by our present statutes has been delegated to the courts in the matter of new trials, is still qualified by the same phrase as in 1780. The Superior Courts, Common Pleas, District Courts and City Courts, " may grant new trials of causes that may come before them." General Statutes, Revision of 1875, p. 447.

The probate courts are nowhere invested with this power, and all other courts are excluded from it by the limitation above mentioned. And as there is no express prohibition in the constitution, and articles II and V are not construed so as to exclude the exercise of all judicial functions, we conclude that, in causes before the probate court, there is still a reserved power in the General Assembly, for good cause shown, to authorize that court to allow an appeal from their doings with a view to a review of the case by the appellate court.

The principal objection on the part of the appellee to the validity of the act in question is, that it was in effect granting a new trial; our discussion therefore has been conducted mainly with reference to its bearing on this point.

It is true that two other objections were strongly urged, that it affects and impairs vested rights, and that it is an act of special legislation.

If however the legislature had power to grant a new trial, the argument that the right had vested is deprived of its force, because the right is not vested absolutely, but is subject to the contingency of further action by the legislature.

The same is true of the other objection, that the act was special in its character. In view of past legislative usage and the previous decisions of this court we are not prepared to accept for this state the legal proposition that special legislation is necessarily against natural justice and therefore void.

In the case of *Welch* v. *Wadsworth*, 30 Conn., 149, a suit had been brought on a note that was usurious, and by existing laws only the principal could be. recovered. The case was defaulted, and after default and before hearing in dam-

ages the legislature passed a special act, validating the contract in favor of one individual, to wit, the Hartford Savings Association, and the point was distinctly made that the act was void because it exempted one individual from the general law. But this court held the act valid notwithstanding.

We concede however that it is a very objectionable species of legislation, and if the last two objections had been urged before the legislature, very likely they ought to have prevailed. This court however does not presume to revise the action of the legislature, if *intra vires*, for as the case stands it is conclusively presumed that the legislature had good reason for enacting the law in question. *Goshen* v. *Stonington*, 4 Conn., 222; *Booth* v. *Woodbury*, 32 Conn., 118.

It is quite possible that there was in the case such mistake or surprise or fraud as that the plainest principles of justice would demand a remedy.

A case like this, tried before commissioners, differs from any ordinary suit at law, where one party, by writ and declaration setting forth his claims, brings his debtor into court, and both parties are present, or have direct notice to be present, and are thus advised of every step taken in the case, and of ulterior remedies in the event of an adverse decision. But here the appellee was not only the claimant to prosecute her claim before the commissioners, but administratrix also, to represent and defend the estate, and it is possible that the appellant, having no interest except as heir, may have been far away at the time of trial, or he may have had no reason to suppose that any such claim existed, or he may have been misled as to the time the report of the commissioners was to be filed.

We should have been better satisfied if some such strong equitable grounds for legislative interference had been disclosed of record; but it was not legally necessary; and as the presumption is that good cause existed, we have a right to test the validity and illustrate the necessity of legislative action in the light of the most favorable supposition.

We cannot say the act is against natural right and justice, unless led to such a result by the adoption of the arbitrary rule to which we have before referred.

The act at the most only affects the remedy, but not the debt, or any of the grounds on which it rests; it determines no right of the appellant, and affects injuriously no right of the appellee. And in these respects it may be distinguished from an act extending the period of the statute of limitations after it had already run against the claim; for in such case it is considered that no further legal obligation rests on the debtor, and he has a perfect defense in law, of which he should not be deprived without his consent. There are legal authorities of great weight which declare such an act invalid; but how it would be regarded in this state we have no occasion now to decide.

Our attention has recently been called to the case of *Mayor & Council of Hagerstown* v. *Schuer*, 37 Maryland, 180, where the court thought " it was not clear that it was not within the scope of legislative power to pass an act that might have the effect to revive as between individuals a cause of action completely barred by limitation before its passage."

In regard to the decisions of the courts of other states that are adverse to our view of the present case, we have previously intimated that many of them were rendered in view of special constitutional provisions much more explicit than our own in limiting legislative action. For example, the constitution of Massachusetts, adopted in 1780, expressly provides in article 30, that:—"In the government of this Commonwealth, the legislative department shall never exercise the executive and judicial powers, or either of them. The executive shall never exercise the legislative and judicial powers or either of them. The judicial shall never exercise the legislative and executive powers or either of them; to the end it may be a government of laws and not of men." And the constitution of Maine, adopted in 1820, provides (Art. III., sec. 2,) that:—"No person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in cases herein expressly directed or permitted." And to the same effect are the constitutions of Vermont, adopted in 1793, (part 2, sec. 6); of Ohio, adopted in 1851, (Art. 2, sec. 32); of New

Jersey, adopted in 1844, (Art. 3, sec. 1); of Indiana, adopted in 1851, (Art. 3, sec. 1); and of Tennessee, adopted in 1839, (Art. 2, sec. 2). The same also is true of many other states.

In the constitution of New Hampshire, adopted in 1792, (Part 1, Art. 23), it is provided that: "Retrospective laws are highly injurious, oppressive and unjust. No such laws therefore shall be made, either for the decision of civil causes, or the punishment of offenses." And article 37 provides that: —" In the government of this state the three essential powers thereof, to wit, the executive, the legislative, and judicial, ought to be kept as separate from and independent of each other as the nature of free government will admit."

If such explicit provisions were in our state constitution we might perhaps be led to the same result that has been reached in other states.

It is also to be observed that article V. of our constitution, after vesting judicial power in certain courts, adds:—"the powers and jurisdiction of which courts shall be defined by law." This clause is omitted in the states referred to, and may be of some significance on the question of the reserved powers of the legislature.

So far we have conducted the discussion without calling to our aid any decisions of other states. There are however several decisions in Maryland and one in Iowa directly in point.

In *Calvert* v. *Williams*, 10 Maryland, 478, a special act of the legislature was held constitutional and valid which author-ized a court of equity, upon the application or petition of the defendant in a certain cause and upon the establishment of a satisfactory *primâ facie* case, to open any decree which had been passed against him in said cause, "to the end that he may account fully, fairly and equitably for the estate," which had been under his management, and for a settlement of which the suit was brought, "provided the said court shall be satisfied that justice will be promoted by opening such decree or order, and provided it be opened upon such terms" as to cost, the nature of the defences to be relied on, the taking of

testimony, &c., "as to the court may seem consistent with equity it being the design of this act to remove any legal impediment to the granting of such application and to afford the defendant such redress upon the principles of justice and equity as he may show himself entitled to, when relieved from the operation of any technical or rigid rule of law."

This seems to cover the entire ground of the case at bar. After a legal judgment in a suit pending in court, the legislature authorized the court to reopen the case and give the defendant a new trial; it also authorized the stay of execution until the new hearing should be had, and after the hearing a still further right of appeal. The accompanying statement of reasons, purposes and conditions, has no bearing on the question of the power of the legislature to pass such an act. These things show a careful and prudent exercise of the power which they possessed. The love of equity and the sense of justice which the legislature of Maryland expressed, may all be presumed in favor of our own legislature.

In *Johnson* v. *Semple*, 31 Iowa, 49, after a trial and judgment for the plaintiff, and no motion for new trial made and no such privilege existed, the legislature passed an act dispensing with motions for new trials, and so, in effect, extended the privilege to cases where it did not before exist. The act was held to be constitutional, because it affected only the remedy. Judge Cole however, while fully sustaining the validity of the act, intimated his opinion of its propriety, by adopting the suggestion of the opposing counsel, who said the act should have been entitled, "an act for the relief and benefit of lazy and careless lawyers."

For the foregoing reasons we affirm both the validity of the appeal and the act authorizing it, and advise that the first ground of the appellee's plea in abatement is insufficient, and that the replication to the second ground of the plea is sufficient.

In this opinion the other judges concurred; except CARPENTER, J., who did not sit.