# Henry *v.* Cohen.

*Motion for Summary Judgment against County Treasurer.*

1. *Commissioners Court; power to provide for support of indigent persons.* In the exercise of the judicial powers with which it is clothed by statute, the Commissioners Court is a court of limited jurisdiction, and the validity of its proceedings must be tested by the principles which pertain to such courts; but, in providing for the support of the poor, it is clothed with large powers, partly akin to each of the three great divisions of governmental powers, and with large discretion in the exercise of those powers : it is the sole judge of the mode and measure of relief to be granted, and is not confined to the inmates or instrumentalities of the county poor-house; nor is it prohibited from incurring a debt in the purchase of supplies deemed necessary for distribution among the destitute of the county.

APPEAL from the Circuit Court of Pickens.

Tried before the Hon. LUTHER R. SMITH.

This was a statutory proceeding by notice and motion, at the suit of Clifford P. Cohen, for a summary judgment against Andrew Henry, as county treasurer of said county, and the sureties on his official bond, on account of his

[Henry v. Cohen.]

refusal to pay a warrant held by the plaintiff, in the order of its registration after presentment. The warrant was transferred to the plaintiff by D. A. Walker & Co., in whose favor it was issued; was presented to the county treasurer for payment, and registered in the order of its presentation; and was in these words: "The State of Alabama, Pickens County. By Commissioners Court. To the treasurer: Pay D. A. Walker & Co., or order, the sum of one hundred dollars, allowed him by said court at November term, 1866, for corn for poor women; and for so doing this shall be your sufficient warrant. Given under my hand, at office in Carrollton, this 22d March, 1869. Fraction of $2,000 warrant, issued Dec. 24th, 1869"; which was signed by the probate judge. This warrant was one of several, similar in terms, given in exchange for a single warrant for $2,000, therein referred to, which was issued on the 24th December, 1867, and given for the price of 2,000 bushels of corn bought by the county, or by the said Commissioners Court, from said D. A. Walker & Co. The county records having been destroyed by fire, the order for the purchase of the corn was not produced; but it was proved on the trial, as the bill of exceptions recites, "that there was on the records of said court an order made by said court, in 1866, for the purchase of 2,000 bushels of corn from D. A. Walker & Co., for general distribution among the poor women and poor families of said county, and among the families of indigent soldiers who had been engaged in the war closed in 1865." The circumstances connected with the purchase and use of the corn, as detailed in the bill of exceptions, are stated in the opinion of the court. It was admitted that the treasurer refused to pay the warrant in the order of its presentment and registration, and that there were in the treasury sufficient funds to pay it; and the treasurer justified his refusal on the ground that the warrant was issued without authority of law, and that he had been instructed by the Commissioners Court, by an order made in July, 1875, to refuse payment of it. The court charged the jury, in effect, that the plaintiff was entitled to recover; and this charge is here assigned as error.

L. M. STONE, and J. A. BILLUPS, for appellants.—If the warrant, though in proper form, duly presented and registered, was not a valid claim against the county, the treasurer was justified in refusing to pay it. A county has a corporate character given to it by statute, but it is not, in any proper sense, a municipal corporation: it is simply a governmental agency, possessing no powers, and subject to no duties, not

[Henry v. Cohen.]

originating from the statute which creates it. It owes its creation to the statute, derives all its powers from the statute, and is subject only to the liabilities imposed by the statute. *Askew v. Hale County*, 54 Ala. 639; *Marengo County v. Coleman*, 55 Ala. 607; 22 Iowa, 267; 36 N. H. 284. The Commissioners Court is one of limited jurisdiction, and all its powers are statutory : it cannot bind the county, except in the manner, and to the extent prescribed by the statute conferring the authority to act.—*Barbour County v. Horn*, 48 Ala. 661; 43 Ala. 568, 575. In the allowance of claims against the county, the court exercises executive, not judicial power, and cannot exceed the limits of the statute.—*Van Eppes v. Comm'rs Court*, 25 Ala. 460; 53 Ala. 27. In making provision for the support of the poor, authority is given to the court "to make such rules and regulations for the support of the poor in the county as are not inconsistent with any law of the State" (Code, § 746, subd. 5); and this is the extent and limit of its authority. The State laws on the subject are embraced in twenty-one sections of the Code—sections 1729-49, inclusive, which also prescribe rules and regulations for the protection of the tax-payers against unwise and unnecessary appropriations. It would be a dangerous principle, and liable to great abuse in practice, to allow the Commissioners Court of each county to make provision for supplying the wants of all persons who appeared to be indigent, or necessitous, without any precautions for ascertaining the facts of each case, and without any limitation upon the amount to be thus expended. The provisions for the erection and support of poor-houses in each county, as regulated by law, contain the necessary safeguards against imposition and extravagance, and are indicative of the public policy. The hardships existing in any particular county, or at any particular time, can not engraft an exception on the general law. If the power to provide for the indigent, outside of the poor-house, exists at all, it is without limit. At the very time the order here sued on was made, equal (if not greater) destitution existed in many other counties ; and special laws were enacted to meet the necessities of each county.—Session Acts 1865-6, pp. 51, 47, 508, 525, 529, 495. The passage of such laws is strong evidence against the existence of the power here claimed and exercised. The emergency of the particular case, or the magnitude of the calamity threatened or apprehended, can make no difference in the application of the legal principle involved.—111 Mass. 454; 60 Maine, 124 ; 21 Illinois, 115; 46 Ala. 388.

D. C. Hodo, and E. D. Willett, *contra*, cited *Enloe v.*

*Reike,* 56 Ala. 500; *Comm'rs Court v. Moore,* 53 Ala. 25; 10 U. S. Digest, 1st series, 603, § 336; George's Miss. Digest, 97, § 5.

STONE, J.—In 1866, an order was passed by the Court of County Commissioners of Pickens county, for the purchase of two thousand bushels of corn from D. A. Walker & Co., for general distribution among the poor women and poor families of said county, and among the families of indigent soldiers who had been engaged in the war closed in 1865. The corn was purchased, and, to secure payment in part for the same, the order sued on in this proceeding was given by the judge of probate, on the county treasurer, bearing date December 24th, 1867. The object of the present proceeding is to compel payment of the order, out of funds admitted to be in the county treasury. The evidence showed, that said corn was distributed to the poor generally, at their residences in the county, outside of the poor-house of the county, and not to the poor in the county poor-house; that said corn was not purchased for the county poor-house, but was purchased for, and distributed among, the poor women and families living in different sections of the county; that at the time referred to there was a poor-house in said county, under directions of said Court of County Commissioners, and there was a duly appointed keeper of said poor-house. The corn was purchased, and was delivered upon orders of the judge of probate, but none was delivered at the poor-house. It was further proved, that there were no general crops raised in 1865; that there was great destitution in the county after the war; that the poor-house of the county was not adequate for the relief and support of all the poor of the county; and that without the aid of such distribution outside of the poor-house, there would have been widespread suffering and distress. The treasurer had been instructed by a resolution of the Court of County Commissioners not to pay said order, and he had refused to pay it when demanded.

The defense relied on is, that the Court of County Commissioners had no authority to purchase the corn for said purpose, nor to issue the warrant sued on. The court charged the jury, "That if the warrant sued on was issued by the Court of County Commissioners of Pickens county, in payment for corn purchased by said court for distribution among the poor generally of said county, and said corn was received under orders of the probate judge, and delivered to the poor of the county outside of the poor-house, then the plaintiff was entitled to recover in this action." This presents the sole question in this cause. The purchase having

[Henry v. Cohen.]

been made after the close of the war, it will be seen that no question arises as to the legality of the consideration. The appellant does not make that defense.

Judge Cooley, in his work on Taxation, p. 88, says : "The support of paupers, and the giving of assistance to those who by reason of age, infirmity, or disability, are likely to become such, is, by practice and the common consent of civilized countries, a public purpose. * * Hospitals are also provided, where dependent classes can receive medical aid and assistance ; and asylums, where the deaf, the dumb and the blind may be supported and taught, and where the insane may be kept from doing or receiving harm, and can have such careful and scientific treatment, with a view to their restoration, as they would not be likely to receive elsewhere. He would be a bold man, who, in these days, should question the public right to make provision for these benevolent objects. And this provision might not only be made by the establishment of institutions for the purpose, but private institutions might undoubtedly be aided with public funds in consideration of services to be rendered to the public, and expenses to be incurred by them, in assisting and relieving the same necessitous and dependent classes."

Burroughs on Taxation, p. 19, § 25, speaking of the purpose for which taxes may be levied, says : "Taxes may be imposed for roads of all kinds, canals and bridges, that there may be facilities for transportation of freight, and for travel ; for public schools or colleges, that the people may be educated ; for public libraries, that their means of improvement may be increased ; for the poor, the dumb, the blind, the insane, lest they suffer from want." In the great case of *Speer v. School Directors*, 50 Penn. St. 150, AGNEW, J., said : "The support of the poor affords one among the best illustrations of what is a municipal or public appropriation of money. The pauper is the party directly and solely benefited, while his pauperism is a public evil, and often is the result of crime." In *Henser v. Harris*, 42 Ill. 425, 436, Judge BREESE, defining what is meant by the phrase 'poor of the county,' said : They are those who are, "in legal contemplation, * * dependent upon public charity ; in other words, they are the paupers who are maintained by taxes levied on the people, or by the income from the public property."

Judge Story, Eq. Jur. § 1139, speaking of charitable bequests under the civil law, says : "If a legacy was given to the church, or to the poor generally, without any description of what church, or what poor, the law sustained it, by giving it, in the first case, to the parish church of the place where the

[Henry v. Cohen.]

testator lived; and in the latter case, to the hospital of the same place; and if there was none, then to the poor of the same parish."

We have made the citations above for the purpose of showing that pauperism and destitution, no matter from what cause they may spring, have always been regarded as matters of public concern, and that the care and maintenance of the destitute impose a public duty, which will justify and uphold a levy of taxes for the purpose. In England, there has long been a system of compulsory support of the poor, under which the local sub-divisions, into which their territory was divided, were compelled to maintain the paupers, having their domicile among them; and if they failed in this duty, a stranger could supply such necessaries, and compel the parish, or local sub-division, to refund the money so expended. Many of the States of this Union have similar systems. See digest of their various rulings on their several statutes, in 10 U. S. Digest, first series, 586 to 642.

In Alabama, we have not adopted a compulsory system, but have confided the subject to the Court of County Commissioners. That court has jurisdiction, " to make such rules and regulations, for the support of the poor in the county, as are not inconsistent with any law of the State." Code of 1876, § 746, subd. 5. "The Court of County Commissioners may purchase and hold lands and other property proper for the erection and continuance of a poor-house, and may, at their discretion, dispose of lands now, or hereafter owned for such purpose, and make titles therefor, and may make all appropriations and orders proper for the erection and continuance of poor-houses, and for the regulation and government of the poor and poor-houses."

It is contended for appellant, that the power of the Court. of County Commissioners to provide for the support of the poor, is limited to inmates of the poor-house. This is too narrow a construction. The entire power and jurisdiction over this very important function and duty of government is confided to this necessary and useful tribunal. It is clothed with large powers, partly akin to each of the three great departments into which government is divided, and it is clothed with large discretion in their exercise. True, in the exercise of statutory, judicial powers, and in pronouncing judicially on the property rights of others, it is a court of limited jurisdiction, and its proceedings are to be tested by the intendments which pertain to statutory, limited jurisdictions.—2 Brick. Dig. 400, § 14. But, in the matter of levying taxes, and making provision for the support of the poor, these rules do not apply.—*Perry County v. Selma, Marion*

*and Memphis Railroad*, at the last term ; *Auditor v. Jackson County*, at the last term. That court, in making provision for the poor, are sole judges of the mode and measure of relief, and are not restricted to the confines, or instrument-alities of the poor-house.—*City of Lowell v. Oliver*, 8 Allen, 247 ; *Freeland v. Hastings*, 10 Allen, 550 ; *Booth v. Town of Woodbury*, 32 Conn. 118 ; *Inhabitants of Veazie v. Inhabitants of China*, 50 Me. 518. On the question of incurring a debt in the purchase of the corn, see *Speer v. School Directors*, 50 Penn. St. 150, in which AGNEW, J., said : "It would be a startling fact, if the people were now to learn from us that a bridge, or poor-house, or a jail or court-house, can not be built, until the taxes have been first laid and collected to pay for it."

The testimony in this record shows that during the year 1865—the year of the close of the late civil war—no general crops were made ; that there was great destitution through-out the country, and that without relief, outside of the poor-house, there would have been widespread suffering and dis-tress. Common knowledge comes to the aid of this testi-mony. At the surrender of the Confederate arms in April, 1865, the colored labor of the country became greatly de-moralized, while a large percentage of the white laborers were in far-away prisons, in remote divisions of the army, or wearied and worn by terribly active duties in the field. Add to this the long and wasting homeward march, the absence of stock with which to cultivate a crop, and the lateness of the season, and it will be readily seen that no general crop could be produced in 1865. To have fed the army of the destitute in the poor-house, was impossible, for the want of capacity of house or houses to contain them. If practicable, it would have been the want of policy and economy, because it would have been to keep them pent up and non-producing, and thus have thrust them upon the year 1867, as destitute of t .e means of subsistence as they were in 1866.

It is urged before us, that in the attempt to relieve the destitution and distress of Pickens county, a very large and embarrassing debt has been created. Perhaps, no more praiseworthy object could have been presented for its crea-tion. But with that we have nothing to do. Even if the order were unwisely passed, that confers no power on us to declare it inoperative. In the strong language of C. J. BLACK, in *Sharpless v. Mayor of Philadelphia*, 21 Penn. St. 144, 159, "We are to deal with this strictly as a judicial question. However clear our convictions may be, that the system is pernicious, we can not put it down by usurping authority

[Wright v. Lang.]

which does not belong to us. That would be to commit a greater wrong than any which we could possibly repair by it."

We find no error in the record, and the judgment is affirmed.