# State, *ex rel.* Farnham *v.* Mims, County Treasurer.

## *Mandamus.*

### (Decided Jan. 16, 1912.   57 South. 466.)

1. *Mandamus; County Officers; Payment of Warrant.*—Mandamus will lie to compel a county treasurer to pay a warrant founded upon a claim authorized by law to be satisfied out of the funds of the county.

2. *Paupers; Support; Statutory Provision.*—In the absence of emergency, county funds cannot be used for the use of a pauper outside of the poorhouse, and the failure of the county commissioners to provide a poorhouse cannot avoid the limitations fixed by sections 1603 and 1607, Code 1907.

APPEAL from Monroe Law and Equity Court.

Heard before Hon. WILLIAM G. McCORVEY.

Mandamus by the State of Alabama on the relation of Chanie Farnham to compel D. D. Mims, as county treasurer, to pay warrant out of county funds. From a decree sustaining demurrers to the petition, relator appeals. Affirmed.

HYBART & HARE, for appellant. The court erred in sustaining demurrers to the petition.—Section 1598, Code 1907; *Henry v. Cohen,* 66 Ala. 382. The legislature placed sections 1606 and 1607, in the Code of 1907, by way of direction to the commissioners as to the manner of admitting paupers to the poorhouse, and providing for them in cases of emergency.

BARNETT & BUGG, for appellee. No brief reached the Reporter.

McCLELLAN, J.—Appeal from a judgment sustaining a demurrer to a petition for writ of mandamus to

compel the treasurer of Monroe county to pay, out of county funds in his hands as such treasurer, a warrant issued, as ordered by the commissioners' court of Monroe county, to Chanie Farnham for pauper allowance, "for her support and maintenance"; she having been theretofore "regularly placed on the pauper list for said county by the commisisoners' court" thereof.

It is averred in the petition that the court of county commissioners have not provided a poorhouse for the maintenance of the poor of the county of Monroe, "but for many years past has provided for and maintained the poor of the county by issuing to them, from time to time, small sums of money which said court has ascertained to be barely sufficient to provide said paupers with the actual necessaries of life; that the warrant issued to your petitioner is one regularly issued petitioner in accordance with said custom of the commissioners' court to provide for paupers *outside of a poorhouse*." (Italics supplied.)

It is also averred that the warrant in question "was, by your petitioner, duly and regularly presented to said D. D. Mims, as county treasurer, and its payment demanded; that the said D. D. Mims failed and refused to pay said warrant, or to register the same, stating that the said warrant was for a claim not authorized by law," and indorsed that reason for his refusal upon said warrant.

It does not appear from the petition that the provision sought to be made for Chanie Farnham by the proceeds of this warrant was with reference to an "emergency," within Code 1907, § 1607. The demurrer points this objection.

The remedy here invoked is appropriate and available, if the warrant is founded upon or grows out of a claim authorized by law to be satisfied out of county funds.—

*Wyker v. Francis,* 120 Ala. 509, 24 South. 895. See *Norwood v. Goldsmith,* 168 Ala. 224, also pages 239, 240, 53 South. 84.

The concrete question presented by the record is whether, in cases not "of emergency," county funds may be employed for the maintenance or support of a pauper *outside of a poorhouse.* It was ruled below that such a use of those funds was not authorized. Under the statutes in force when this warrant was ordered issued, that ruling must be affirmed. If the statutes on the subject had remained as they were when *Henry v. Cohen,* 66 Ala. 382, was decided, there would be no doubt of the correctness of the appellant's (petitioner's) contention. It was then held, in effect, that the commissioners' courts had committed to them a discretion in the application of the well-recognized power for the relief of paupers within their jurisdictions. By sections new to the subject in the Code of 1907 (chapter 37, pp. 710-714, of Pol-Code), this power was limited in unmistakable terms. Section 1607 provides: "The court of county commissioners, and in case of emergency, the commissioner of the district, may provide for the temporary relief of a pauper until he can be removed to the poor-house, not exceeding one month." As appears, a limit of one month is expressly fixed upon the maintenance of a pauper outside of a poorhouse, and then only in cases of *emergency.* This intent of the statute is further confirmed by the provisions of section 1603, whereby the commissioners' court are commanded to "prevent the poor from strolling from one district to another."

The custom alleged in this petition cannot, of course, avail to render wholly vain the limitation of the statute quoted. It was the evident purpose of the statutes to inhibit just the *custom* to which the pleading refers, and to restrict the support or maintenance of the paupers

of a county, who have had or are entitled to settlement therein, at the county expense, to inmates of the poorhouse, except in cases of emergency, which cannot avail to justify the use of county funds for a period "exceeding one month." Nor can the failure of courts of county commissioners to provide poorhouses operate to avoid the limitation of the statute quoted. There may be force in the suggestion of counsel for appellant that paupers may be so few in number in a county that wisdom and economy would both approve their maintenance and support in the homes of friends or kindred therein, rather than the incurring by a county of a large and disproportionate expense in the purchase and maintenance of a poorhouse. However, such considerations can only be heard or heeded by the Legislature. This court cannot revise the decisions of that branch of the government upon such matters of pure policy. It may be, however, that the lawmakers conceived that the general good and the general economy of county administration would be the better conserved if pauper charges were segregated and congregated in the county almshouse and that, from such a method, a surer application of the best benefits of county bounty to the unfortunate pauper would be obtainable. In so doing, maintenance and support is made certain by the supplying of shelter, food, etc., directly to the inmate; whereas the gift of money alone, to even the most deserving of county bounty, might prove of little actual benefit to the object, because of inadequate shelter or insufficient food secured by private contract or arrangement; or, perhaps, importunity might extract from the intended beneficiary's hand much, if not all, of the public bounty.

The judgment is affirmed.

Affirmed. All the Justices concur, save Dowdell, C. J., not sitting.